RAFAEL A. JUSTINIANO, demandante y recurrido, *v.* ESTADO LIBRE ASOCIADO DE PUERTO RICO y AUTORIDAD DE CARRETERAS DE PUERTO RICO, demandado y recurrente la segunda.

*Número:* R-70-321        *Resuelto:* 16 de diciembre de 1971

*Antonio Córdova González, Pedro Toledo González & Edwin Tyler Albizu,* abogados de la Autoridad de Carreteras de Puerto Rico; *Enrique Alcaraz Casablanca,* abogado del recurrido.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del Tribunal.

Rafael A. Justiniano demandó al Estado Libre Asociado de Puerto Rico y a la Autoridad de Carreteras en reclamación de daños y perjuicios. Fundó su causa de acción en que la Autoridad de Carreteras, luego de adjudicarle la buena pro en una subasta para la construcción de 1.760 kilómetros de carretera en el Municipio de Sabana Grande procedió posteriormente, sin exponer motivos, a anular dicha subasta.

Contestada la demanda y luego de celebrarse un juicio en los méritos, el Tribunal Superior, Sala de Mayagüez, dictó sentencia condenando a la Autoridad de Carreteras a pagar al demandante, en concepto de daños y perjuicios, la suma de $7,379.00 más las costas y $800.00 para honorarios de abogado. Expedimos un auto para revisar esta sentencia.

Los hechos esenciales que sirvieron de fundamento a la referida sentencia según las conclusiones del tribunal sentenciador, son los siguientes:

La demandada Autoridad de Carreteras anunció la subasta para la construcción de un tramo de 1.760 kilómetros de carretera en el Municipio de Sabana Grande conociéndose la propuesta obra como proyecto Santana. El demandado señor Justiniano concurrió a dicha subasta como licitador después de haber la Autoridad dádole todas las facilidades para examinar los pliegos de especificaciones y haber él realizado los estudios correspondientes para someter su licitación.

Las copias de los planos que fueron entregadas y sometidas a los varios licitadores adolecían del defecto de no tener leyenda alguna ni suplir información alguna en cuanto a la relocalización de las líneas de agua. Solamente en los planos originales que estaban en la posesión de la demandada existía una nota al calce que leía *"water line to be relocated"*. La relocalización de estas líneas de agua tenía un valor estimado que fluctuaba entre $18,000.00 y $25,000.00.

Para el 17 de agosto de 1967, una vez abiertas y leídas públicamente las proposiciones de los licitadores el demandante tuvo conocimiento que él era el postor más bajo y además tuvo conocimiento de las demás proposiciones hechas por los otros licitadores. De la comparación de las distintas proposiciones aparecía que en relación con la partida de relocalización de líneas de agua, el demandante había cotizado la suma de $1,000.00; la del licitador de mayor cotización era de $16,500.00 y el estimado de costo de la Autoridad de Carreteras era de $18,333.72. El 20 de agosto de 1967 el demandante escribió una carta concediendo a la Junta de Subasta una prórroga de 15 días para que procediera a la adjudicación de la subasta. Dicha prórroga se concedió con la intención de que la Junta en pleno estudiara el asunto de la partida de relocalización de líneas de agua. El Presidente de la Junta de Subasta le sugirió al demandante que continuara con los trámites relacionados con la adjudicación de la subasta.

En su pliego de proposiciones el demandante tomó en consideración y cotizó la relocalización de líneas de agua a pesar de que la información que le ofrecía el plano era insuficiente.

El día 26 de septiembre de 1967 el demandante fue notificado por el Presidente de la Junta de Subasta de que se le había adjudicado la subasta por la cantidad de su proposición de $106,482.92. De la hoja de resumen de licitaciones aparece que el estimado de los ingenieros de la Autoridad para dicho proyecto era de $123,616.37 y que entre el estimado del demandante y el del siguiente licitador más bajo había una diferencia de $18,217.74.

El 27 ó 28 de septiembre de 1967 el demandante se reunió con el Presidente de la Junta de Subasta y discutieron sobre la enorme diferencia existente entre las cotizaciones del demandante y de la Autoridad en cuanto a la partida de relocalización de líneas de agua, sobre la insuficiencia de la información suplida en los planos, sobre el efecto negativo econó-

mico que podía producir dicha diferencia en el presupuesto del demandante y sobre el planteamiento del demandante de renegociar la partida de relocalización de líneas de agua.

El 28 de septiembre del mismo año 1967 el Presidente de la Junta de Subasta notificó al demandante que se dejaría abierta la fecha de adjudicación del contrato o de la decisión final sobre el proyecto hasta tanto se considerara y se resolviera el planteamiento del demandante para que se negociara la partida de relocalización de líneas de agua.

El día 9 de octubre de 1967 el demandante se reunió con los miembros de la Junta de Subasta y se discutió en dicha reunión la partida de relocalización de las tuberías de la Autoridad de Acueductos y Alcantarillados. La Junta aceptó en esa fecha que los planos entregados a los licitadores no contenían información suficiente sobre la relocalización de las líneas de agua.

En 30 de octubre del mismo año, el demandante requirió de la Junta que le comunicara su decisión sobre la adjudicación del contrato, y por comunicación telegráfica del 31 de octubre la Junta notificó al demandante que había anulado la subasta del proyecto Santana.

La Junta rehusó renegociar con el demandante la partida de relocalización de las líneas de agua y anuló la subasta bajo el razonamiento de que dicha renegociación directa con el licitador era ilegal y resultaba injusta para los demás licitadores.

La demandada procedió entonces a anunciar una nueva subasta para el proyecto Santana. El demandante no concurrió a la misma como licitador. El más bajo en dicha nueva subasta hizo una proposición de $110,241.16; pero la responsabilidad de la relocalización de las líneas de agua fue asumida por la Autoridad de Acueductos y Alcantarillados de Puerto Rico por la suma de $18,333.72.

En sus conclusiones de derecho el tribunal a quo resolvió que la actuación de la Junta al ordenar la cancelación de

la subasta era ilegal y que dicha actuación no estuvo fundada en protección de los mejores intereses de la Autoridad y sí en la protección de los demás licitadores.

La "Ley de Autoridad de Carreteras de Puerto Rico"—Ley Núm. 74 de 23 de junio de 1965—dispone en su Art. 11, que todo contrato de obra o de servicios, excepto servicios personales y toda compra que efectúe la Autoridad, incluyendo contratos para la construcción de facilidades de tránsito, deberán hacerse mediante anuncio de subasta hecho con suficiente antelación de apertura de pliegos de proposiciones para que la Autoridad asegure el adecuado conocimiento y oportunidad de concurrencia. Luego señala este artículo una serie de excepciones, ninguna de las cuales cubre al proyecto Santana. Dispone además el referido artículo:

"Al comparar proposiciones y hacer adjudicaciones, se dará debida consideración a aquellos factores (además de si el postor ha cumplido con las especificaciones), tales como la habilidad del postor para realizar trabajos de construcción de la naturaleza envuelta en el contrato bajo consideración; la calidad y adaptabilidad relativas de los materiales, efectos, equipo o servicios; la responsabilidad económica del licitador y su pericia, experiencia, reputación de integridad comercial y habilidad para prestar servicios de reparación y conservación; y el tiempo de entrega o de ejecución que se ofrezca. La Autoridad podrá decretar reglamentos para la presentación de licitadores." (9 L.P.R.A. Sec. 2011, *Suplemento Acumulativo*, 1969, págs. 85 y 86.)

El propósito que persiguen los estatutos de esta naturaleza que requieren la celebración de subasta es que haya competencia en las proposiciones de manera que el Estado consiga que se realice la obra al precio más bajo posible.[1] Además, al requerirse que la subasta y el contrato se adjudiquen al postor más bajo se evita que haya favoritismo, corrupción, extravagancia y descuido al otorgarse los contratos.[2]

---

[1] *Ragland* v. *Comm.*, 200 S.E. 601.

[2] *Attorney General* v. *Public Lighting Commission*, 118 N.W. 935.

Recuérdese que el día 26 de septiembre de 1967, el demandante fue notificado de que se le había adjudicado la subasta y que uno o dos días después dicho demandante hizo al Presidente de la Junta de Subasta el planteamiento de renegociar la partida de relocalización de las líneas de agua. Era obvio que su cotización para esa partida era extremadamente baja. La de la propia Autoridad era por $18,333.72 y algunos licitadores la cotizaron en más de $16,000.00. La diferencia en la cotización de esta partida evidentemente determinó que la oferta del demandante para ejecutar el proyecto resultara la más baja.

■ La Junta de Subasta se negó a renegociar dicha partida. De haberlo hecho hubiera infringido el Reglamento que aprobó la Autoridad en virtud de la facultad que le concedió el Art. 2 de la ley. En su Art. IV, inciso E, dispone el Reglamento:

"E: Los sobres conteniendo las ofertas de los distintos licitadores comenzarán a abrirse en presencia de los licitadores asistentes, a la hora exacta y fecha fijada, disponiéndose, *que ninguna proposición podrá ser modificada una vez la misma haya sido abierta . . . .*" (Bastardillas nuestras.)

Y en su inciso C, el Art. VI, dispone:

"2. Bajo ninguna circunstancia se permitirá el retiro de la oferta, *o hacer cambios o modificaciones a la misma después de haber sido abierta y leída al público.* (Bastardillas nuestras.)

■ En este caso la proposición del demandante a la Junta de Subasta conllevaba efectuar modificaciones o cambios a su oferta después de haber sido abiertas y leídas al público todas las ofertas. El Reglamento provee que la Junta puede entrar en negociaciones directas con el licitador responsable más bajo cuando esto resulte lo más conveniente a los mejores intereses de la Autoridad. Mas esto sólo puede hacerse después de la decisión de la Junta anulando la subasta. Se establece en tal caso una orden de prioridades, entre las que figura

340

en tercer lugar, la negociación directa con el licitador responsable más bajo. Al efecto dispone el Art. V, inciso F:

"F. Si la decisión de la Junta de Subasta es que se anule la subasta bajo consideración, deberá recomendar:

1. Anunciar una nueva subasta.

2. Recomendar la ejecución de la obra por administración.

3. Entrar en negociaciones directas con el licitador responsable más bajo cuando esto resulte lo más conveniente a los mejores intereses de la Autoridad.

4. Cuando no sea posible aplicar alguna de las disposiciones que preceden, en el orden de prioridad en que aparecen, se podrá tomar cualquier acción que se considere conveniente a los mejores intereses de la Autoridad."

Sin embargo, la redacción del Reglamento de la Junta de Subasta parece indicar que la Junta puede (1) adjudicar la subasta, ó (2) declararla nula y luego hacer las recomendaciones indicadas en el ya transcrito inciso "F".

Si la Junta no accedió a renegociar con el demandante la partida para la relocalización de las líneas de agua, a lo cual no venía obligada porque (1) ello equivalía a enmendar la oferta del demandante después de abiertas y conocidas las ofertas de los otros licitadores, y (2) hubo una falta de suficiente información a los licitadores en cuanto a dicha partida, aunque el demandante cotizó por ella luego de obtener la información necesaria, no venía la Autoridad obligada a adjudicarle al demandante el contrato para la ejecución del proyecto Santana, no empece el hecho de que inicialmente el Presidente de la Junta de Subasta le había comunicado que la subasta le había sido adjudicada a él. (³)

■ Se ha resuelto que una agencia tiene el derecho de revocar la adjudicación de la subasta antes de que se formalice el contrato correspondiente ya que la adjudicación no obliga a la agencia hasta que se formalice por escrito el contrato de ejecución de obra conteniendo todos los requisitos legales. (⁴)

---

(³) Véase, 46 *Am. Jur.* § *43.*

(⁴) *Covington* v. *Bosch Bros. Co.,* 233 P.2d 837.

Es obvio que la anulación de la subasta redundaba en beneficio de los intereses de la Autoridad. Evitó así el riesgo de que no fuera posible al demandante la ejecución de la obra en el tiempo y conforme las especificaciones del contrato y surgieran problemas con motivo de la baja oferta hecha por el demandante. Redunda también en beneficio de los otros licitadores quienes se vieron impedidos de hacer ofertas más bajas debido a que cotizaron más o menos el valor calculado de la partida de relocalización de líneas de agua mientras que el demandante cotizó dicha partida en una suma inferiorísima, como resultado de lo cual, resultó el postor más bajo. Finalmente creemos que también resultó en beneficio y no en perjuicio del demandante pues, una vez la Autoridad se negó con razón a renegociar con él la susodicha partida de relocalización de líneas de agua, con toda probabilidad el proyecto le acarrearía pérdidas y no ganancias.

Por las razones expuestas *se revocará la sentencia dictada en 13 de febrero de 1970 por el Tribunal Superior, Sala de Mayagüez.*

El Juez Presidente, Señor Negrón Fernández, no intervino.