EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Empresas Toledo, Inc.<br><br>Recurrida<br><br>vs.<br><br>Junta de Revisión y Apelación de Subastas de la Autoridad de Edificios Públicos y Autoridad de Edificios Públicos<br><br>Peticionaria | Certiorari<br><br>2006 TSPR 138<br><br>168 DPR \_\_\_\_ |

Número del Caso: CC-2005-0382

Fecha: 31 de agosto de 2006

Tribunal de Apelaciones:

       Región Judicial de San Juan-Panel II

Juez Ponente:

       Hon. Troadio González Vargas


Abogados de la Parte Peticionaria:

       Lcdo. Enrique R. Adames Soto
       Lcdo. Jorge Lora Longoria
       Lcda. Grace M. Santana Balado
       Lcdo. Mark E. Ortiz Walter

Abogado de la Parte Recurrida:

       Lcdo. Guillermo Toledo


Materia: Revisión Administrativa


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Empresas Toledo, Inc.

    Recurrida

        vs.                  CC-2005-382     CERTIORARI

Junta de Revisión y Apelación
de Subastas de la Autoridad de
Edificios Públicos y Autoridad
de Edificios Públicos

    Peticionarios


OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 31 de agosto de 2006


El 2 de septiembre de 2003, la Autoridad de Edificios Públicos, en adelante la Autoridad, convocó a una subasta para la demolición de la Escuela University Gardens de Hato Rey.[1] A la referida subasta comparecieron como licitadores varias compañías, entre ellas, Empresas Toledo Inc. y Gatec Inc. De las compañías licitadoras, Empresas Toledo fue el licitador más bajo con una oferta de $467,718.[2] Por su parte, la oferta

---

[1] Subasta Núm. AEP 8869.

[2] El licitador más bajo, originalmente, lo había sido otra compañía, SAQ Environmental Engineers, con una oferta de $415,000. Sin embargo, ésta quedó descalificada por no cumplir con los requisitos de la subasta.

sometida por Gatec Inc., ascendió a $749,900.[3]

La Junta de Subastas de la Autoridad evaluó las ofertas sometidas por todos los licitadores. Luego de la referida evaluación, la Autoridad notificó a Empresas Toledo que la buena pro de la subasta había sido adjudicada a Gatec, Inc. Según la Autoridad, la razón por la cual no se había adjudicado la misma a Empresas Toledo --a pesar de haber sido el licitador más bajo-- <u>fue que su propuesta estaba muy por debajo de los estimados presentados por el diseñador y la propia Autoridad, lo que hacía improbable la realización de los trabajos según su propuesta.</u>[4]

---

[3] Las ofertas específicas de los nueve licitadores que acudieron a la subasta fueron las siguientes:

| Licitador | "Base Bid" | Aditivas Alternas |
|---|---|---|
| SAQ Environmental Engineers | $415,000.00 | (20,000.00) (28,000.00) |
| Empresas Toledo, Inc. | 467,718.00 | (51,153.00) (57,991.00) |
| Toledo Engineering Corp. | 440,000.00 | (88,000.00) (115,000.00) |
| Controlled Demolition & Recycling Corp. | 607,977.70 | (32,000.00) (41,400.00) |
| Gatec, Inc. | 749,900.00 | (50,000.00) (100,000.00) |
| C M Service, Inc. | 840,000.00 | (20,000.00) (250,000.00) |
| Zitro Construction Corp. | 871,000.00 | (30,000.00) (35,000.00) |
| Aníbal Díaz Construction | 889,000.00 | (29,000.00) (43,000.00) |
| Modern Technology Construction | 599,000.00 | (528,000.00) (728,659.00) |

[4] Surge de la minuta de la Junta de Subastas que las licitaciones más económicas se evaluaron por orden y del mismo modo. Es decir, tomando en consideración, entre otros aspectos, la cantidad ofertada y su comparación con los estimados de costo de la Autoridad y de su Diseñador. Así por ejemplo, en la referida minuta se hace constar que el mejor

Inconforme con la adjudicación realizada por la Autoridad, Empresas Toledo presentó un escrito de apelación ante la Junta de Revisión y Apelación de Subastas de la Autoridad, en adelante, la Junta de Apelaciones. En la

_____

licitador lo fue SAQ Environmental Engineering, Inc, que la misma tenía capacidad económica para realizar los trabajos, pero que, sin embargo, la firma pertenecía a alguien que tenía un contrato de servicios profesionales con la Autoridad y que, además, <u>la propuesta del licitador estaba más de un 60% por debajo de los estimados de costo de la Autoridad y del Diseñador</u>.

De igual forma se evaluó la oferta de Empresas Toledo quien fue el tercer licitador con la propuesta más económica, la cual tenía capacidad económica para realizar los trabajos según los estados financieros presentados. Su propuesta se envió al área de diseño para evaluación técnica y la Arquitecto Nilda Marchany indicó que: "a pesar que las Empresas Toledo resultó ser el mejor licitador, su propuesta está muy por debajo de los estimándoos presentados por el Diseñador y la Autoridad; <u>lo que hace cuestionable la realización de los trabajos según establece dicha propuesta</u>.

Así, la Autoridad continuó evaluando a los demás licitadores. El cuarto licitador con la propuesta más económica lo fue Modern Technology Construction. Sin embargo, su licitación en el "Base Bid" sumada a las dos Aditivas Alternas <u>estaba $730,617 sobre los estimados de costo de la Autoridad</u>. El quinto licitador con la propuesta más económica, Controlled Demolition & Recycling, Corp. fue descartado porque el estado financiero que sometió excedía los quince (15) meses, incumpliendo de este modo con el Requerimiento núm. 18 del "Statement of Bidders Qualifications".

El sexto licitador con la propuesta más económica lo fue Gatec, Inc. Según la evaluación técnica del Área de Diseño éste estaba 9% por debajo del estimado del Diseñador y 25% por debajo del estimado del Área de Diseño. A esos efectos, se hace constar en la referida minuta que:

> "El Área de Diseño recomienda que se le adjudique la subasta a la firma Gatec, Inc. según la propuesta base a pesar que el licitador no es el más bajo, pero su propuesta es más viable y es el más que se acerca a la realidad del mercado según los estimados de los profesionales externos y de la Autoridad".

referida apelación argumentó, en síntesis, que ella había cumplido con todos los requisitos legales requeridos para la subasta; que el precio que proveyó para realizar la obra de demolición fue uno razonable; y que, además, le proporcionaría una ganancia razonable a la Autoridad. Por esta razón, solicitó que se revocara la adjudicación de la subasta a Gatec, Inc. y se le adjudicara la misma.

La Junta de Apelaciones, al resolver el caso, destacó que la licitación total de Empresas Toledo en el "Base Bid", sumada a las dos aditivas alternas, estuvo aproximadamente 50% por debajo de los estimados presentados por el Diseñador y la Autoridad. El referido organismo determinó, además, que la magnitud de la diferencia en el precio no podía pasar desapercibida, ni resultaba en un por ciento que la Junta de Subastas de la Autoridad podía considerar razonable ya que el interés de este organismo era que los proyectos se realizaran a un precio bajo y efectivo; que para lograr dicho propósito, dicha Junta de Subastas debía determinar, como organismo con peritaje para ello, cuán factible o real era la propuesta presentada y cuan segura era para la agencia y el erario público.

En fin, la Junta de Apelaciones concluyó que una diferencia de la magnitud que se presentaba en este caso revelaba que la habilidad de Empresas Toledo para completar el trabajo al precio ofrecido era irreal. En vista de que la Junta de Subastas de la Autoridad basó su decisión en la totalidad del expediente, el conocimiento especializado que

poseía en la materia y su interés en proteger la integridad del erario contra el riesgo de incumplimiento, la Junta de Apelaciones resolvió que la decisión de la Junta de Subastas de la Autoridad no fue caprichosa o irrazonable, sino que fue una correcta. Por lo cual, denegó la solicitud de Empresas Toledo de revocar la adjudicación de la subasta hecha a favor de Gatec, Inc.

Inconforme con la anterior determinación, Empresas Toledo acudió al Tribunal de Apelaciones mediante recurso de revisión administrativo. En dicho recurso alegó que la Junta de Apelaciones había errado al fundar su determinación en que el precio ofrecido por Empresas Toledo estaba muy por debajo de los estimados presentados por el diseñador de la obra ya que, según la Sección 9 del Artículo VI de la Constitución del Estado Libre de Puerto Rico[5], la adjudicación de la subasta debía hacerse al postor más bajo. Asimismo, alegó que ni la Junta de Subastas ni la Junta de Apelaciones habían tomado en cuenta otros elementos que favorecían se le adjudicara la subasta.

En la sentencia que emitiera, el foro apelativo intermedio expresó que los fondos públicos debían siempre utilizarse de manera prudente y juiciosa para así evitar su despilfarro, razón por la cual la propuesta más baja en una

---

[5] El citado precepto constitucional dispone que:

> Sólo se dispondrá de las propiedades y fondos públicos para fines públicos y para el sostenimiento y funcionamiento de las instituciones del Estado, y en todo caso por autoridad de ley.

subasta merecía seria consideración y no podía descartarse por el mero hecho que ésta estaba muy por debajo de los estimados del diseñador de la Autoridad. Además, el referido foro judicial determinó que Empresas Toledo había demostrado tener vasta experiencia en trabajos de demolición de estructuras, solvencia financiera, disponibilidad de equipo, materiales adecuados y personal adiestrado y competente. En conclusión, el foro apelativo intermedio resolvió que el rechazo de la propuesta más baja, ausente otros factores de más relevancia que la mera opinión de costo del diseñador, había sido uno arbitrario que no estaba sostenido por evidencia sustancial. Según el tribunal apelativo intermedio, este criterio no era suficiente para derrotar la propuesta más baja de Empresas Toledo, la cual representaba ahorros significativos para el erario, razón por la cual, revocó la resolución de la Junta de Apelaciones.

Insatisfecha, la Autoridad de Edificios Públicos acudió ante este Tribunal, mediante recurso de *certiorari*, imputándole al foro apelativo intermedio haber errado:

> al revocar el dictamen emitido por la Junta de Revisión y Apelación de Subastas de la Autoridad de Edificios Públicos, al interferir con la discreción y pericia administrativa que rechazó una licitación conforme las leyes, reglamentos y jurisprudencia aplicables y en la protección del interés público.

Expedimos el recurso. Estando en posición de resolver el recurso radicado, procedemos a así hacerlo.

I

A

El procedimiento de pública subasta es de suma importancia y está revestido del más alto interés público. Oliveras, Inc. v. Universal Insurance Co., 141 D.P.R. 900 (1996). En materia de adjudicación de subastas, hemos expresado que "[l]a buena administración de un gobierno es una virtud de democracia, y parte de una buena administración implica llevar a cabo sus funciones como un comprador con eficiencia, honestidad y corrección para proteger los intereses y dineros del pueblo al cual dicho gobierno representa." A.E.E. v. Maxón Engineering Services, Inc. res. el 9 de diciembre de 2004, 2004 TSPR 197; RBR Const., S.E. v. A.C., 149 D.P.R. 836, 848-849 (1999); Oliveras, Inc. v. Universal Ins. Co., 141 D.P.R. 900, 926-927 (1996); Hatton v. Mun. De Ponce, supra; Mar-Mol Co. Inc. v. Adm. Servicios Gens., 126 D.P.R. 864, 871 (1990).

El objetivo fundamental de las subastas es, precisamente, proteger al erario mediante la construcción de obras públicas y la adquisición de servicios de calidad para el Gobierno al mejor precio posible. Para ello es necesario que haya competencia en las proposiciones, fomentando la competencia libre y transparente entre el mayor número de licitadores posible de manera que el Estado consiga que se realice la obra al precio más bajo posible. RBR Const., S.E. v. A.C., ante; Cancel v. Municipio de San Juan, 101 D.P.R. 296, 300 (1973).

Los propósitos principales de la legislación que regula la realización de obras y la contratación de servicios para el Gobierno y los sistemas de subastas gubernamentales son precisamente ésos: proteger los intereses y dineros del pueblo al promover la competencia para lograr los precios más bajos posibles; evitar el favoritismo, la corrupción, el dispendio, la prevaricación, la extravagancia y el descuido al otorgarse los contratos, y minimizar los riesgos de incumplimiento. Véase: Justiniano v. E.L.A., 100 D.P.R. 334 (1971). Hemos expresado, además, que el esquema de subasta evita la corrupción gubernamental y protege al erario garantizando la contratación de servicios al postor más bajo. Oliveras, Inc. v. Universal Insurance Co., ante.

Ello no obstante, señalamos en Maxón, ante, que lo anterior no implicaba que las agencias no gocen de ninguna discreción en la evaluación de las distintas propuestas sometidas. "La agencia, con su vasta experiencia y especialización, se encuentra, de ordinario, en mejor posición que nosotros para determinar el mejor licitador tomando en consideración los factores esgrimidos tanto por la ley como su Reglamento de Subastas". A.E.E. v. Maxón Engineering Services, Inc., ante; Fac. C. Soc. Aplicadas, Inc. v. C.E.S., 133 D.P.R. 521, 533 (1993); Rubin Ramírez v. Trías Monge, 111 D.P .R. 481, 484-485 (1981).

En lo pertinente al presente caso, expresamos en Maxon, ante, que, cuando se trata de la adquisición de servicios técnicos de gran costo y sofisticación, la selección de un

proveedor sobre otros puede conllevar decisiones que descansen, no en criterios estrictamente matemáticos, sino en una valoración de la tecnología, y los recursos humanos con que cuenta esta, a la luz de las necesidades presentes y futuras de la agencia. A.E.E. v. Maxón Engineering Services, Inc., ante.

## B

Los procedimientos de subastas no están regulados por una ley especial general. La Sec. 3.19 de la Ley de Procedimiento Administrativo Uniforme, en adelante, L.P.A.U., 3 L.P.R.A. sec. 2169, dispone que los procedimientos de subasta serán informales y que tanto su reglamentación como sus términos serán establecidos por las agencias. Queda pues, a la discreción de cada agencia, como entidad con el conocimiento especializado, aprobar un reglamento que establezca el procedimiento y las guías a seguir en sus propias subastas. L.P.C. & D. Inc. v. A.C., 149 D.P.R. 869, 875 (1999).

A tenor con esta normativa, la Autoridad de Edificios Públicos aprobó un Reglamento de Subastas, Reglamento Núm. 6051 aprobado el 30 de noviembre de 1999[6], el cual establece las normas para el trámite, celebración y adjudicación de las

---

[6] Promulgado en virtud del Artículo 5, Inciso 3, de la Ley Número 56 del 19 de junio de 1958, según enmendada, que crea la Autoridad de Edificios Públicos, 22 L.P.R.A., Sec. 906, y de las disposiciones aplicables de la Ley Núm. 170 del 12 de agosto de 1988, según enmendada, 3 L.P.R.A., Secs. 2151 – 2171.

subastas celebradas. El Inciso (9) del Artículo II del referido Reglamento define el procedimiento de adjudicación de subasta como "aquel dispuesto por este Reglamento mediante el cual se adjudica el desarrollo de un proyecto o la prestación de servicios, <u>tomando en consideración tanto el precio como componentes cualitativos de naturaleza técnica o administrativa, que hagan de la licitación lo más conveniente a los intereses de la Autoridad y que corresponde al concepto de lo que en el idioma inglés se conoce como 'best value' o 'greatest value'."</u> (Énfasis nuestro).

Dispone, además, el mencionado Reglamento que deberán hacerse mediante el procedimiento de subasta, entre otros, todos los contratos de construcción, cuando el costo estimado para la ejecución de la obra exceda de $50,000. Artículo III, Inciso (1). A esos efectos, y dentro del proceso de evaluación de las licitaciones o propuestas sometidas antes de la adjudicación de una subasta, el Secretario de la Junta de Subastas recibirá, del Área de Diseño, un informe de evaluación sobre las dos licitaciones más bajas dentro de un plazo de diez días laborables a partir de la fecha de apertura. El Área de Diseño preparará el análisis de evaluación conforme a la siguiente información, suministrada por los licitadores o por investigaciones realizadas por otros medios a su alcance.

1. Experiencia

2. Solvencia económica y moral

3. Equipo adecuado disponible

4. Personal técnico capacitado

5. Comportamiento en proyectos realizados para la Autoridad, otras agencias, y/o empresas privadas. La solvencia económica no se considerará en el informe que se prepare para el segundo mejor postor, a menos que este segundo mejor postor se llegue a considerar para la adjudicación de la subasta.
Artículo VI Sección H(1) Incisos (a) y (b).


El informe de evaluación preparado por el Área de Diseño junto a las hojas de tabulación, las licitaciones y toda la documentación de la subasta, se someterá a la Junta de Subastas en reunión que convocará el Secretario en coordinación con el Presidente para el análisis correspondiente conducente a la adjudicación de la subasta. La Junta discutirá el informe de evaluación, tomando en consideración, entre otros factores: el montante de la oferta y todas las condiciones y circunstancias que por su naturaleza hagan más beneficiosa la licitación. Artículo VI, Sección H (2)(d) Incisos (1) y (2).

La subasta se adjudicará al licitador responsable cuya licitación cumpla con las especificaciones, términos y condiciones generales establecidas en los documentos de subasta y según se considere más conveniente al interés público. Artículo VI Sección H (2)(a).

Es menester enfatizar que la Junta de Subastas tendrá la facultad de recomendar al Director Ejecutivo de la Autoridad el rechazo de las licitaciones en una subasta. De particular relevancia al presente caso, la Junta tendrá facultad para recomendar al Director Ejecutivo el rechazo de la licitación

más baja en precio, cuando ésta no cumpla con las especificaciones, términos y condiciones de la subasta y cuando tenga conocimiento y exista evidencia de que el licitador que hace la licitación no ha dado atención y cumplimiento satisfactorio a contratos que le hayan sido otorgados. Así también, cuando se estime que los mejores intereses de la Autoridad no estarían adecuadamente protegidos. Artículo VI Sección H(2)(d)(4).

De la discusión anterior se desprende; primero: que al no existir una ley especial que regule los procedimientos de subasta, no existe una norma legislativa que obligue a las agencias del gobierno a adjudicar las subastas celebradas al licitador más bajo. Segundo, es de notar, específicamente, que el Reglamento de Subastas de la Autoridad de Edificios Públicos no garantiza la adjudicación de la subasta al postor más bajo, toda vez que está facultada para rechazar la licitación más baja en precio cuando, entre otras razones, la Autoridad entienda que sus intereses no estarán adecuadamente protegidos.

En cuanto a la evaluación de las propuestas sometidas en el caso hoy ante nuestra consideración, precisa enfatizar que el Inciso (9) del Artículo II del Reglamento de Subastas de la Autoridad de Edificios Públicos define el proceso de adjudicación de  subastas como aquel que proporcione el mayor beneficio("best value") a la agencia. Lo anterior responde a que uno de los objetivos en la contratación gubernamental es que el contrato final sea otorgado a aquel ente que esté más

capacitado para realizar la obra específica en cuestión. Esto, en aras de obtener la mejor calidad de mano de obra y garantizar que el trabajo sea realizado de forma eficiente y dentro del tiempo acordado.

Por ello, un organismo gubernamental está facultado para rechazar la licitación más baja en todas aquellas ocasiones en que estime que los servicios técnicos, probabilidad de realizar la obra de forma satisfactoria y dentro del tiempo acordado, materiales, etc., que ofrezca un postor más alto corresponde a sus mejores intereses. Claro está, la agencia tiene discreción de rechazar la oferta más baja por una más alta siempre y cuando esta determinación no esté viciada por fraude o sea claramente irrazonable.

Sabido es que las determinaciones de hecho de organismos y de agencias administrativas públicas tienen a su favor una presunción de regularidad y corrección que debe ser respetada mientras la parte que las impugne no produzca evidencia suficiente para derrotarlas. Fac. Soc. Aplicadas, Inc., ante. Los tribunales apelativos han de conceder una deferencia a las decisiones administrativas, debido a que éstas cuentan con vasta experiencia y los conocimientos especializados en los asuntos que le han sido encomendados. Pacheco Torres v. Estancias de Yauco, S.E., res. el 30 de septiembre de 2003, 2003 TSPR 148.

De acuerdo con la Sección 4.5 de la L.P.A.U., 3 L.P.R.A. § 2175, según ha sido interpretado previamente por este Tribunal, la revisión judicial de una actuación

administrativa debe limitarse a evaluar la razonabilidad de la decisión recurrida, la cual deberá ser sostenida a menos que se demuestre que la misma es arbitraria o caprichosa. Cruz Negrón v. Administración de Corrección, res. el 28 de marzo de 2005, 2005 T.S.P.R. 34; Ramírez v. Depto. de Salud, 147 D.P.R. 901 (1999).

El peso de la prueba de demostrar lo anterior recae en el demandante y si este no puede demostrar una ausencia de factores racionales o razonables para la determinación de la agencia, deberá demostrar un perjuicio o una violación a los estatutos o reglamentos aplicables. DeMat Air, Inc. v. U.S., 2 Cl. Ct. 202 (1983). "These standards provide that the court will uphold an agency's decision unless plaintiff shows that it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. sec. 706(2)(A); 28 U.S.C. sec. 1491(b)(4). Fru-Con Construction Co., Inc. v. U.S., 57 Fed.Cl. 483, 484-85 (2003). "In addition, in order to prevail in a protest the protester must show a significant error in the procurement process, and also that the error prejudiced it. Advanced Data Concepts, Inc. v. U.S., 216 F.3d 1054, 1057 (2000). "To establish prejudice a protester must show that there is a 'substantial chance' it would have received the contract award but for that error." Alfa Laval Separation, Inc. v. U.S., 175 F.3d 1365, 1367 (1999).

III

En el presente caso, no está en controversia que Empresas Toledo, para efectos del Reglamento de Subastas de la Autoridad, cumple con todos los requerimientos, términos y condiciones generales establecidas en los documentos de subasta.[7] Tampoco está en controversia que la decisión de la agencia de denegarle la adjudicación de la subasta a Empresas Toledo se basó en los estimados del diseñador.

Debemos determinar, en consecuencia, si la diferencia entre el estimado costo de la obra, según el diseñador, y el precio ofrecido por Empresas Toledo, es razón válida y suficiente para que la Autoridad rechazara a Empresas Toledo, la cual sometió la propuesta más baja en el presente caso. Para ello, hay que mantener presente que la Agencia goza de entera discreción al evaluar a los licitadores y sus distintas propuestas y está en mejor posición de decidir cuál de ellos responde a sus mejores intereses.

La Autoridad sostiene que, al planificar una obra de construcción, ella prepara un estimado de costo para evaluar la viabilidad de la obra y la disponibilidad de fondos. Señala, además, que dicho estimado es preparado por expertos arquitectos e ingenieros y se utiliza para conocer si el precio ofrecido por los licitadores en una subasta es uno viable y razonable de forma que se ajuste al mercado de que

---

[7] Ello así ya que Empresas Toledo cumple con los requisitos de experiencia, ausencia de incumplimiento con algún otro contrato, ser dueña de todo su equipo, poseer personal adiestrado y competente, y haber prestado fianza de pago y cumplimiento.

se trate. Indica la referida Agencia que una propuesta irrazonablemente baja comparada con el estimado, puede ser indicativo de un error en la licitación, de partidas que no fueron cotizadas, de materiales de inferior calidad, etc.

Estas circunstancias podrían conllevar, según la Autoridad, un riesgo de incumplimiento. Por esta razón, la Autoridad sostiene que puede rechazar la licitación que se distancie, de forma sustancial, del estimado de costo preparado por los expertos que le asesoran, aun cuando ésta sea la más baja en precio.

Aun cuando, según discutimos anteriormente, en nuestra jurisdicción no existe estatuto alguno que obligue a las agencias gubernamentales a adjudicar la subasta al postor más bajo, nuestra jurisprudencia ha sido enfática en cuanto a que el propósito primordial de una subasta es que el gobierno obtenga los mejores servicios al mejor precio posible, protegiendo de este modo al erario.

En cumplimiento con el mencionado propósito, de ordinario, el licitador más bajo debe ser considerado para realizar la obra siempre y cuando cumpla con los requisitos reglamentarios de la agencia y tenga la capacidad de realizar la obra de forma eficiente. Dicha determinación, repetimos, es una discrecional de la agencia, ya que es ésta la que cuenta con los conocimientos técnicos especializados para decidir qué oferta es la más conveniente. La agencia llega a su decisión tomando en consideración los factores esgrimidos tanto por la ley como su Reglamento de Subastas. Es por ello

que para invalidar una determinación de este tipo <u>es necesario que quien la impugne demuestre que la misma se tomó de forma arbitraria, caprichosa o mediando fraude o mala fe</u>.

El rechazo de la oferta de Empresas Toledo, en base al precio ofrecido por ella, alegadamente se debió a que la Autoridad estimó que dicha licitación <u>no</u> respondía a la realidad en el mercado y que probablemente correspondía a un error en la cotización de las obras, o a que Empresas Toledo brindaría materiales de baja calidad, etc. <u>Estimó la Autoridad, que dicha cotización era una irrazonable y muy inferior en comparación con el costo estimado de la obra hecho por los arquitectos de la Autoridad y otros profesionales externos y que podría conllevar un riesgo de incumplimiento</u>. La Autoridad evaluó que la propuesta más alta de Gatec, Inc. se acercaba más a dicho estimado y que, por lo tanto, era <u>más viable</u> la realización de la obra según la misma. <u>Entendemos razonable que la Autoridad --utilizando la información que le brindaron sus propios arquitectos-- entendiera que la oferta más baja en precio en este caso no respondía a lo que la obra de demolición de la estructura en cuestión debía costar</u>.

En aras de evitar que, de adjudicarse la subasta a Empresas Toledo, ésta se viera imposibilitada de ejecutar la obra por el precio ofrecido y de acuerdo a los términos y condiciones del contrato y de tener que recurrir a órdenes de cambio u otros recursos, la Autoridad concedió el contrato de demolición de la escuela a quien mejor entendió tenía más

capacidad técnica para realizar la obra según el precio ofrecido. Para realizar las referidas evaluaciones, el estimado de costo de sus diseñadores resulta ser una variable comparativa apropiada.

En consecuencia, el hecho de que un licitador haga la propuesta más baja no obliga al organismo público a adjudicar la subasta a dicho licitador. Existen consideraciones de interés público, como la necesidad de obras bien realizadas, que garanticen ganancias y no perdidas, que hacen que la licitación más baja no resulte ser siempre la más económica.[8] "Establecer una regla inflexible de que el contrato debe adjudicarse al postor más bajo, prescindiendo de tales consideraciones, privaría al público del beneficio del criterio de los funcionarios públicos en aquellas cuestiones en que el estatuto requiere que ellos lo ejerciten. En ausencia de fraude, mala fe o abuso de discreción, ningún postor tiene derecho a quejarse cuando otra proposición es elegida como la 'más ventajosa.' La cuestión debe decidirse a la luz del interés público y ningún postor tiene un derecho adquirido en ninguna subasta". Great. Am. Indem. Co. v.

_____

[8] A esos efectos, en Justiniano v. E.L.A., ante, confirmamos la actuación de la Autoridad de Carreteras de anular una subasta luego de ser adjudicada al postor más bajo porque la cotización que hizo de una de las partidas (relocalización de líneas de agua) estaba aproximadamente unos $18,000 por debajo del estimado de costo de la Autoridad. La Autoridad se negó a renegociar dicha partida con dicho licitador. Al avalar dicha actuación, expresamos que al anular la subasta la Autoridad evitaba el riesgo de que no fuera posible al demandante la ejecución de la obra debido a la baja oferta realizada por éste.

Gobierno de la Capital, 50 D.P.R. 911 (1942). (Énfasis nuestro).

Debe señalarse, además, que la Autoridad evaluó las otras ofertas del mismo modo, esto es, descartando las ofertas que se alejaban sustancialmente del costo estimado según la Autoridad, ya sea por que las mismas eran muy bajas o muy altas.[9] Otras ofertas que se acercaron más a dicho estimado fueron descartadas por otras razones.[10] En fin, dentro de ese ejercicio responsable de adjudicación fue que se seleccionó a Gatec, Inc. Es de notar que ofertas más altas que la propuesta por Gatec, Inc., ni tan siquiera fueron consideradas por la Autoridad.[11] En el referido proceso de evaluación no hubo violación alguna a las leyes vigentes ni del Reglamento de la Autoridad.

En resumen, somos del criterio que Empresas Toledo no ha presentado ninguna evidencia que demuestre que la Autoridad haya rechazado su oferta de forma arbitraria o caprichosa o, lo que es igual, que la adjudicación hecha a favor de Gatec, Inc. respondiera a favoritismo o a fraude. Empresas Toledo tampoco señala que se hubiera cometido un error en el procedimiento de subasta, ni que se hubiera violado el Reglamento de la Autoridad. Lo único que Empresas Toledo

---

[9] Estos son los casos de SAQ Environmental Engineering, Empresas Toledo y Modern Technology Construction.

[10] Controlled Demolition & Recycling fue descartada por que su estado financiero excedía los quince (15) meses.

[11] Nos referimos a las licitaciones de CM Service, Inc., Zitro Construction Corp., y Aníbal Díaz Construction, las cuales ni tan siquiera figuran en la minuta de subastas.

sostiene como fundamento para que proceda la revocación de la determinación de la agencia es que, como licitador más bajo, la subasta le debió haber sido adjudicada.

La Autoridad, en todo momento, ha sostenido que el rechazo del postor más bajo en este caso se debió a que la oferta hecha por Empresas Toledo <u>estaba un 50% por debajo de lo que el diseñador de la Autoridad promedió como costo de los trabajos de demolición de la Escuela University Gardens</u>. Somos del criterio que --para garantizar la realización de la obra de la mejor forma posible y al mejor precio posible-- <u>dichas razones son válidas y correctas para descartar al postor más bajo en este caso</u>. Por último, es menester recordar que el Reglamento de Subastas promulgado por la Autoridad de Edificios Públicos <u>autoriza expresamente</u> a dicha entidad a rechazar al licitador más bajo en precio cuando entienda que su interés particular y el interés público no estarán protegidos adecuadamente, tal y como ocurrió en el presente caso. En consecuencia, <u>no</u> estamos ante una situación de ausencia de fundamentos razonables o de actuaciones arbitrarias o caprichosas que justifiquen anular la subasta celebrada por la Autoridad en el presente caso.

Por los fundamentos antes expresados procede <u>revocar</u> la sentencia emitida en el presente caso por el Tribunal de Apelaciones.

Se dictará Sentencia de conformidad.


                        FRANCISCO REBOLLO LÓPEZ
                             Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Empresas Toledo, Inc.

    Recurrida

        vs.                           CC-2005-382     CERTIORARI

Junta de Revisión y Apelación
de Subastas de la Autoridad de
Edificios Públicos y Autoridad
de Edificios Públicos

    Peticionarios


SENTENCIA

San Juan, Puerto Rico, a 31 de agosto de 2006


      Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia revocatoria de la emitida en el presente caso por el Tribunal de Apelaciones.

      Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez emitió Opinión de Conformidad. Los Jueces Asociados señor Fuster Berlingeri y señor Rivera Pérez disintieron sin opinión escrita.


                     Aida Ileana Oquendo Graulau
                  Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Empresas Toledo, Inc.

    Recurrida

        v.                         CC-2005-382

Junta de Revisión y Apelación
de Subastas de la Autoridad de
Edificios Públicos y Autoridad
de Edificios Públicos

    Peticionarios

Opinión de Conformidad emitida por la Juez Asociada señora Rodríguez Rodríguez

San Juan, Puerto Rico a 31 de agosto de 2006

Estoy conforme con la determinación que anuncia hoy el Tribunal en la Opinión Mayoritaria, donde se reconoce que la controversia medular en este caso es que la Autoridad de Edificios Públicos tiene amplia discreción para descartar al licitador más bajo en precio si ello redunda en el mejor bienestar para la agencia.

A poco que se analice la controversia ante nuestra consideración, nos percatamos que no estamos frente a una controversia sobre si la propuesta seleccionada por la Autoridad de Edificios Públicos cumplía o no con los requisitos descritos en las

especificaciones, o si el licitador a quien se le adjudicó la buena pro era un licitador responsable y responsivo. El asunto ante nuestra consideración se refiere únicamente al alcance de la discreción que posee una agencia administrativa con conocimiento experto, para rechazar la propuesta del licitador más bajo con el propósito de salvaguardar así sus intereses y proteger al erario.

## I

Los hechos del presente caso han sido ampliamente narrados en la Opinión mayoritaria sin embargo estimamos conveniente resaltar lo siguiente. La subasta realizada por la Autoridad de Edificios Públicos (en adelante, la "Autoridad"), AEP 8869, para la demolición de la Escuela University Gardens de Hato Rey, fue adjudicada a Gatec, Inc., quien era el sexto licitador en orden de precio.

De la minuta de la Junta de Subastas se desprende que por lo menos tres de las licitaciones más bajas fueron rechazadas por la misma razón que fue rechazada la de Empresas Toledo; a saber, porque el precio estimado en las mismas se distanciaba sustancialmente de los estimados de costes del proyecto previamente preparados por los diseñadores de la Autoridad.[12] Así, Empresas Toledo, Inc., fue descartada ya que "su propuesta está muy por debajo de los estimados presentados por el Diseñador y la Autoridad; lo que hace cuestionable la realización de los trabajos

---

[12] Los otros dos licitadores cuyas propuestas estuvieron por debajo de la presentada por Gatec, Inc., fueron descalificados por no cumplir con alguno de los requisitos de las especificaciones o con la reglamentación pertinente.

según establece dicha propuesta." Véase apéndice del recurso de *certiorari*, págs. 88 y 106.

Inconforme con tal determinación, Empresas Toledo presentó un escrito de apelación ante la Junta de Revisión y Apelación de Subastas de la Autoridad. Expresó que poseía muchos años de experiencia en proyectos de demoliciones en Puerto Rico y que la decisión de la agencia era irrazonable y contraria a los mejores intereses de la Autoridad. Además, consideró que la razón para rechazar su propuesta era inmeritoria, toda vez que posee capacidad económica para realizar el proyecto y prestó una fianza para responder por un incumplimiento en la realización de la obra.[13] En consecuencia, Empresas Toledo solicitó que se revocara la adjudicación hecha a Gatec, Inc., y se le adjudicara la misma.

La Junta de Revisión y Apelación de Subastas confirmó la determinación de la Autoridad de adjudicar la buena por a Gatec, Inc. Se indicó, que ello obedeció a que **la licitación total de Empresas Toledo estuvo aproximadamente un cincuenta por ciento (50%) por debajo de los estimados presentados por los diseñadores de la Autoridad.** Véase apéndice del recurso de *certiorari*, pág. 72. **Precisamente, Empresas Toledo admitió que su propuesta era $281,029 por debajo de la presentada por Gatec, Inc.**

---

[13] La Autoridad debe requerir una fianza de licitación para asegurar que el licitador, en caso de resultar agraciado, formalice el contrato en el tiempo determinado. Artículo VI(B)(3)(d) del Reglamento de Subastas de la Autoridad de Edificios Públicos, Reglamento Núm. 6051 de 30 de noviembre de 1999.

Inconforme, Empresas Toledo acudió en revisión al Tribunal de Apelaciones. El tribunal apelativo intermedio revocó la conclusión de la agencia por considerarla arbitraria e irrazonable. Entendió que no concurrían los criterios necesarios para rechazar la propuesta más baja ya que no se consideró la vasta experiencia y trayectoria de Empresas Toledo, su solvencia financiera, la disponibilidad de equipo y materiales adecuados y el personal adiestrado y competente que posee la compañía. Al así resolver, el tribunal apelativo intermedio **determinó que el estimado del diseñador de la Autoridad de Edificios Públicos no era un factor de importancia** en el cual se pudiera descansar exclusivamente al adjudicar la subasta.[14]

En desacuerdo, la Autoridad acudió ante nosotros e impugnó la revocación hecha por el tribunal apelativo. Indicó que la actuación del foro apelativo interfería impermisiblemente con su discreción y pericia en la adjudicación de subastas de esta índole.

Nos corresponde por tanto determinar, si la Autoridad estaba facultada para rechazar la propuesta del mejor postor por encontrar que ésta era demasiado baja en comparación con los estimados de costes del proyecto realizados por la agencia previo al inicio del proceso de subastas en cuestión.

_____

[14] Véase Sentencia de 31 de enero de 2005 y Resolución de 18 de marzo de 2005 del Tribunal de Apelaciones, apéndice del recurso de _certiorari_, págs. 12-24 y 2-3, respectivamente.

## II

Con el propósito de disponer uniformidad a los procedimientos administrativos del Estado Libre Asociado de Puerto Rico, se promulgó la Ley de Procedimientos Administrativos Uniforme (en adelante "LPAU") como cuerpo de reglas mínimas para gobernar de manera uniforme los procesos de adjudicación y reglamentación pública. *Perfect Cleaning Services v. Corp. del Centro Cardiovascular*, res. 16 de agosto de 2004, 162 D.P.R. ____, 2004 T.S.P.R. 138; *Asoc. de Dueños Casas Parguera v. Junta de Planificación*, 148 D.P.R. 307 (1999); *Pagán Ramos v. F.S.E.*, 129 D.P.R. 888 (1992). En relación a los procedimientos administrativos de adjudicación de subastas, la LPAU solamente uniformó el procedimiento de reconsideración ante la agencia y la revisión judicial de la orden o resolución final de la entidad gubernamental. 3 L.P.R.A. secs. 2151, 3169 y 2172; *Perfect Cleaning Services v. Corp. del Centro Cardiovascular*, *supra.*

A falta de legislación especial, queda a la discreción de cada ente gubernamental, utilizando su conocimiento especializado, aprobar un reglamento que establezca el procedimiento y las guías a seguir para las subastas de sus respectivas dependencias. 3 L.P.R.A. sec. 2169. Véase además, *L.P.C. & D., Inc. v. A.C.T.*, 149 D.P.R. 869, 875 (1999); *RBR Construction v. A.C.T.*, 149 D.P.R. 836, 850 (1999).

Conforme a lo anterior y en virtud de su ley habilitadora,[15] 22 L.P.R.A. sec. 906, la Autoridad de Edificios Públicos promulgó su Reglamento de Subastas, Reglamento Núm. 6051 aprobado el 30 de noviembre de 1999 (en adelante, el "Reglamento"). Conforme el Reglamento, todos los contratos de construcción cuyo **costo de ejecución estimado** sea mayor de cincuenta mil dólares ($50,000), deberán otorgarse mediante el procedimiento de subastas allí establecido. Artículo III(A)(1) del Reglamento.

Antes de que se inicie el proceso de subasta, la Autoridad debe tener en su poder la siguiente documentación: **estimado de costo**, planos, especificaciones y certificación de fondos disponibles u orden de requisiciones de compra y servicios de la Oficina de Administración. Artículos V(B)(4) y VI(B)(2) del Reglamento. El estimado de costo lo prepara, de ordinario, los arquitectos y diseñadores de la Autoridad.

Mediante el proceso de adjudicación de subastas se asigna "el desarrollo de un proyecto o la prestación de servicios, **tomando en consideración tanto el precio como componentes cualitativos de naturaleza técnica o administrativa, que hagan de la licitación la más conveniente a los intereses de la Autoridad** y que corresponda al concepto de lo que en el idioma inglés se conoce como 'best value' o 'greatest value'." (Énfasis nuestro.) Artículo II(9) del Reglamento.

---

[15] La Ley Núm. 56 del 19 de junio de 1958, según enmendada, crea la Autoridad de Edificios Públicos.

El objetivo principal al adjudicar una subasta pública es dual, por un lado, para que se realice la obra al precio más bajo posible, evitando así el favoritismo, la corrupción, la extravagancia y el descuido al otorgarse los contratos; y por otro lado, adelantar y salvaguardar los mejores intereses de la agencia gubernamental. *RBR Construction v. A.C.T.*, 149 D.P.R. 836, 849 (1999); *Cancel v. Mun. de San Juan*, 101 D.P.R. 296, 300 (1973); *Justiniano v. E.L.A.*, 100 D.P.R. 334, 338 (1971).

De ordinario, los intereses de la agencia se resguardan adjudicando la buena pro al licitador más bajo. La experiencia sin embargo nos demuestra que ello no siempre es así. Es decir, no siempre se sirven los mejores intereses del gobierno adjudicando la buena pro a quien licitó por debajo de los demás. Me explico.

Una propuesta de subasta cuyo estimado de costes sea **excesivamente bajo en comparación con lo estimado por la agencia**, puede ser un indicio de que el licitador no podrá cumplir con el proyecto conforme la oferta hecha o que el proyecto se construirá deficientemente. Cuando la oferta resulte excesivamente baja, el licitador, para poder cumplir con lo propuesto, tendrá que abaratar sus costos --lo que generalmente significa materiales más baratos y de peor calidad. Ello a su vez perjudica la calidad del producto terminado. Por otro lado, el licitador se habrá de valer de órdenes de cambio para solventar el problema que supone haber subestimado los costes del proyecto. O

simplemente, abandonará el proyecto pues no puede asumir el exceso de costos. Evidentemente, ninguna de estas posibilidades redunda en beneficio para la agencia concernida. Todo ello abona a que a la hora de decidir a quién se le adjudicar la buena pro, se deben evaluar otros factores además del costo. Debe quedar claro, sin embargo, que aun cuando se evalúen otros criterios, los costes del proyecto siguen siendo uno de primera importancia.

Es por ello que hemos indicado que la selección de un licitador sobre otro "puede conllevar decisiones que descansen, no en criterios estrictamente matemáticos, sino en una valoración de la tecnología, y los recursos humanos con que cuenta ésta, a la luz de las necesidades presentes y futuras de la agencia." *A.E.E. v. Maxon Engineering Services*, res. 9 de diciembre de 2004, 163 D.P.R. ____, 2004 T.S.P.R. 197.

Siguiendo los criterios antes descritos, la Junta de Subastas de la Autoridad tiene la tarea de recomendar al Director Ejecutivo a quién adjudicársele una subasta o, si la misma debe ser anulada. La Junta, previo a su determinación, deberá recibir del Área de Diseño un informe de evaluación de las dos licitaciones más bajas. En este informe se consideran los siguientes factores: 1) experiencia, 2) solvencia económica y moral, 3) equipo adecuado disponible, 4) personal técnico capacitado, 5) comportamiento en proyectos realizados para la Autoridad, otras agencias, y/o empresas privadas. La información a

evaluar será provista por los licitadores o mediante investigaciones realizadas por el Área de Diseño. Artículo VI(H)(1)(b) del Reglamento. Igualmente, la Junta de Subastas recibirá un informe sobre la solvencia económica de los licitadores de parte de la Oficina de Contraloría, el cual certificará la disponibilidad de fondos para la realización del proyecto subastado. Artículo VI(H)(1)(c) del Reglamento.

La subasta debe ser adjudicada al licitador responsable cuya licitación cumpla con las especificaciones, términos y condiciones generales establecidas en los documentos de subasta y según se considere más conveniente al interés público. Utilizando los informes del Área de Diseño y de la Oficina de Contraloría y la documentación suministrada por los licitadores, la Junta de Subastas hará su recomendación al Director Ejecutivo. Artículo VI(H)(2) del Reglamento.

El propio Reglamento en su Artículo VI(H)(2), le confiere facultad a la Junta de Subastas para recomendar **"el rechazo de la licitación más baja en precio**, cuando ésta no cumpla con las especificaciones, términos y condiciones de la subasta; cuando tenga conocimiento y exista evidencia de que el licitador que hace la licitación no ha dado atención y cumplimiento satisfactorio a contratos que le hayan sido otorgados. Así también, **cuando se estime que los mejores intereses de la Autoridad no estarían adecuadamente protegidos."** Asimismo, puede

recomendar al Director Ejecutivo que considere y adjudique la subasta a un licitador cuya cantidad sea menor a la estipulada en las condiciones de la subasta, si así se protegen los mejores intereses de la Autoridad. Artículo VI(H)(d)(4) del Reglamento.

La Autoridad por lo tanto, tiene amplia discreción para evaluar el precio estimado en una propuesta al hacer la adjudicación tomado en cuenta lo que mejor convenga al interés público. Recordemos pues, que "[l]a agencia, con su vasta experiencia y especialización, se encuentra, de ordinario, en mejor posición que nosotros para determinar el mejor licitador tomando en consideración los factores esgrimidos tanto por la ley como su Reglamento de Subastas." *A.E.E. v. Maxon Engineering Services*, *supra*, a la pág. 202 y casos allí citados.

Claro está, la discreción de la agencia no puede ser arbitraria, sino que está circunscrita al ejercicio de un juicio *bona fide*, basada en hechos que razonablemente sustenten su determinación. Como por ejemplo, el estimado en costos preparados por los expertos de la propia agencia previo al inicio del proceso de subastas en sí, y mientras la agencia evaluaba si acometer el proyecto o no. Por otro lado, la determinación de la agencia administrativa goza de una presunción de regularidad y corrección, que solo puede ser derrotada si quien impugne la misma demuestra que se tomó de forma arbitraria, caprichosa o mediando fraude o mala fe. *Cruz Negrón v. Adm. de Corrección*, res. 28 de

marzo de 2005, 164 D.P.R. ___, 2005 T.S.P.R. 34; *Fac. C. Soc. Aplicadas, Inc. v. C.E.S.*, 133 D.P.R. 521, 538 (1993).

### III

Como acertadamente se señala en la Opinión, la cuestión que "[d]ebemos determinar, en consecuencia, [es] si la diferencia entre el estimado de costo de la obra, según el diseñador, y el precio ofrecido por Empresas Toledo, es razón válida y suficiente para que la Autoridad rechazara a Empresas Toledo, la cual sometió la propuesta más baja en el presente caso." (Énfasis en original.) Opinión, a la pág. 16.

El Tribunal de Apelaciones revocó la adjudicación de la subasta porque estimó que la disparidad entre el precio de la propuesta y el precio estimado no puede ser el único factor para descartar al licitador más bajo. Una lectura integral de las disposiciones reglamentarias aplicables permite concluir que el foro apelativo intermedio erró al así actuar.

Ciertamente, el valor licitado para realizar el proyecto subastado no es el único factor a considerarse al momento de adjudicar la buena pro. Aunque no se debe perder de perspectiva que el objetivo principal del gobierno al realizar una subasta es precisamente que se logre conseguir el precio más bajo posible para el desarrollo propuesto. Por tal razón, el Reglamento hace referencia a que se considere tanto el precio como

componentes cualitativos de naturaleza técnica o administrativa al adjudicar la buena pro.

Al sopesar todos esos factores, la agencia debe decidir cuál de ellos inhabilita al licitador más bajo en precio. Nuestro análisis debe limitarse a determinar si tal actuación fue razonable o no. Como ya vimos, el Reglamento de Subastas permite rechazar la propuesta más baja si así se protege el interés público.

La Autoridad sostiene que el estimado de costes que preparan sus arquitectos e ingenieros se utiliza para procurar que el precio ofrecido por los licitadores sea uno **viable y razonable de manera que se ajuste al mercado del cual se trate.** Entiende que cuando la disparidad existente en precio es significativa, existe un riesgo de incumplimiento pues puede ser indicativo, como habíamos adelantado, de que el licitador no podrá cumplir por ese precio. O, que la oferta hecha puede ser uno artificiosa, y que adjudicada la buena pro y comenzado los trabajos, se recurra a la utilización de órdenes de cambios en exceso para solventar el problema de un precio original inviable. No hay duda que la excesiva utilización de órdenes de cambio encarece los proyectos. Es por ello, entre otras cosas, que observamos una y otra vez como proyectos de obra pública tienen un costo final que excede por mucho lo que originalmente se contempló. Por lo tanto, la oferta excesivamente baja puede suponer un subterfugio para obtener la buena pro y burlar el proceso de subasta.

Este razonamiento, utilizado por la Autoridad para rechazar la propuesta de Empresas Toledo, no es arbitrario ni caprichoso. **Recordemos que esta última cotizó el proyecto en un 50% menos de los costes estimados por la propia agencia, por lo que la diferencia entre una cantidad y la otra es significativa.** En vista de lo cual y ante la ausencia de alegación o evidencia adicional que nos compela a cuestionar la decisión de la Autoridad, estimo no debemos intervenir con el juicio de ésta. Es por ello que estoy conforme con el resultado a que llega la mayoría del Tribunal en su Opinión.

Por último, Empresas Toledo planteó que la agencia podría utilizar el argumento de que la oferta se distancia sustancialmente del estimado para adelantar intereses particulares. Este argumento no es festinado y ello podría ocurrir. Sin embargo, en el récord de este caso nada hay que nos lleve a sospechar que ello pudo haber ocurrido aquí. Adviértase que la agencia necesita saber el costo estimado del proyecto a subastarse para evaluar su viabilidad y la disponibilidad de fondos. En tal sentido, la cantidad propuesta por los diseñadores de la Autoridad no se hace con el único propósito de escoger al licitador que realizará la obra. Por el contrario, aún antes de comenzar el proceso de subasta, según el Reglamento, la Autoridad tiene que tener en su poder el estimado de costo del proyecto a subastarse, preparado por la agencia. Por

tal razón, la referida evaluación pierde cualquier viso de irregularidad o parcialidad.


                                        Anabelle Rodríguez Rodríguez
                                              Juez Asociada