El Juez Presidente Señor Hernández Dentón
emitió la opinión del Tribunal.
En esta ocasión nos corresponde determinar si procede una acción en daños y perjuicios a favor de una licitadora que no resultó favorecida en una subasta gubernamental. En específico, debemos resolver si actuó correctamente el Tribunal de Apelaciones al concluir que Perfect Cleaning Service, Inc., licitadora perdidosa en una subasta realizada por el Centro Cardiovascular de Puerto Rico y el Caribe, puede reclamarle a esta última los gastos y desembolsos en que incurrió para participar en la subasta. Por entender que un licitador a quien no se le adjudicó una subasta cuyo resultado es posteriormente revocado no tiene a su favor una causa de acción en daños y perjuicios contra la entidad gubernamental de que se trate, revocamos el dictamen recurrido.
I
Los hechos de este caso no están en controversia. El Centro Cardiovascular de Puerto Rico y el Caribe (Centro *142 Cardiovascular) invitó al público a participar de una su-basta para la contratación de servicios de limpieza. A la referida subasta comparecieron varias entidades, entre ellas, Perfect Cleaning Service, Inc. (Perfect Cleaning) y NBM Enterprises. La subasta finalmente fue adjudicada a favor de esta última.
Inconforme con la decisión, y tras varios trámites ante la Junta de Subastas, Perfect Cleaning presentó un re-curso de revisión ante el Tribunal de Apelaciones adu-ciendo que NBM Enterprises no había cumplido con el pliego de especificaciones y que, por lo tanto, no se le debió conceder la buena pro. El foro apelativo revocó la adjudica-ción de la subasta por entender que, en efecto, NBM Enterprises no cumplió cabalmente con los requisitos aplicables. En vista de ello, más tarde se celebró una nueva subasta cuyo resultado también fue revocado en la etapa de revisión. En esa ocasión, el Tribunal de Apelaciones or-denó expresamente la celebración de una nueva subasta.
Amparándose en el dictamen del foro apelativo que re-vocara la adjudicación hecha a favor de NBM Enterprises, Perfect Cleaning presentó una demanda sobre daños y per-juicios contra el Centro Cardiovascular y su Junta de Subastas. Sostuvo que la subasta antes mencionada fue ilegalmente adjudicada a favor de NBM Enterprises y que dicha actuación le ocasionó daños, ya que —a su enten-der— fue el postor más bajo que cumplió con todas las exigencias. En vista de ello, solicitó una compensación de $2,008,800.
En respuesta a la referida demanda, el Centro Cardiovascular presentó una Moción de Desestimación, para adu-cir que la demanda incoada por Perfect Cleaning dejaba de exponer una reclamación que ameritara la concesión de un remedio. Perfect Cleaning se opuso a la solicitud de deses-timación utilizando como fundamento la opinión emitida en RBR Const., S.E. v. A.C., 149 D.P.R. 836 (1999), ya que —a su entender— allí se reconoció una causa de acción en *143 daños y perjuicios a favor de los licitadores perjudicados por la adjudicación ilegal de una subasta.
Tras varios incidentes procesales, el Tribunal de Pri-mera Instancia dictó sentencia desestimando la demanda. Determinó que no procedía la indemnización solicitada porque el foro apelativo no resolvió que la subasta le co-rrespondía a Perfect Cleaning.
Insatisfecha con el dictamen, y tras haber solicitado in-fructuosamente la reconsideración de éste, Perfect Cleaning acudió nuevamente ante el Tribunal de Apelaciones. Dicho foro revocó la determinación recurrida por entender que Perfect Cleaning podía reclamarle al Centro Cardiovascular los gastos y desembolsos realizados para partici-par de la subasta al amparo de las doctrinas de culpa in contrahendo y abuso de derecho.
El Centro Cardiovascular acude ante nos y aduce que erró el foro apelativo al resolver que Perfect Cleaning tiene a su disposición una causa de acción al amparo de las doc-trinas mencionadas, meramente por haber participado en una subasta cuya adjudicación fue posteriormente revocada.
Examinada la petición, le concedimos un término a Perfect Cleaning para mostrar causa por la cual no debamos revocar el dictamen recurrido. Perfect Cleaning compare-ció oportunamente. Con el beneficio de sus respectivas po-siciones, procedemos a resolver.
II
Al evaluar el recurso de autos, partimos de la premisa de que las subastas son invitaciones que hace determinada entidad para que se presenten ofertas para la realización de obras o la adquisición de bienes y servicios. La normativa que regula las subastas gubernamentales busca proteger los intereses del pueblo, procurando conseguir los precios más bajos posibles; evitar el favoritismo, la corrup- *144 ción, el dispendio, la prevaricación, la extravagancia y el descuido al otorgarse los contratos, y minimizar los riesgos de incumplimiento. Accumail P.R. v. Junta Sub. A.A.A., 170 D.P.R. 821 (2007); Empresas Toledo v. Junta de Subas-tas, 168 D.P.R. 771 (2006).
Los licitadores que participan de dichos eventos lo hacen con el fin de presentar sus cotizaciones con respecto a las obras, bienes o servicios objeto de la subasta. No obstante, dichos postores no tienen un derecho adquirido meramente por su participación en la subasta. Torres Prods. v. Junta Mun. Aguadilla, 169 D.P.R. 886 (2007); Empresas Toledo v. Junta de Subastas, supra. Ello responde, entre otras cosas, al hecho de que generalmente el momento en que una agencia gubernamental queda obligada en un proceso de subasta es cuando se otorga el contrato y no cuando se adjudica la buena pro. Véase Justiniano v. E.L.A., 100 D.P.R. 334, 340 (1971). En conformidad con ese principio, las agencias poseen discreción para seleccionar el postor que más convenga al interés público y pueden, incluso, revocar la adjudicación de una subasta antes de que se formalice el contrato correspondiente.(1) Véanse: Cordero Vélez v. Mun. de Guánica, 170 D.P.R. 237 (2007); A.E.E. v. Maxon, 163 D.P.R. 434 (2004).
Ahora bien, hemos reconocido que existen circunstancias en las cuales, aunque no se formalice el vnculo contractual, las partes pueden incurrir en responsabilidad civil. A esos efectos, en Prods. Tommy Muñiz v. COPAN, 113 D.P.R. 517, 528-530 (1982), resolvimos que el rompimiento injustificado de las negociaciones(2) constituye un *145 hecho ilícito que puede generar responsabilidad civil extra-contractual bajo la llamada culpa in contrahendo.(3) En esa ocasión, aclaramos que dicha responsabilidad precontrac-tual puede surgir en circunstancias particulares al amparo de figuras tales como la culpa, el dolo, el fraude, la ausen-cia de buena fe, el abuso de derecho o bajo otros principios generales del derecho.
Esta normativa fue invocada posteriormente en RBR Const, S.E. v. A.C., supra, págs. 847-848. En ese caso, un licitador recurrió ante este Foro para que se declarara la ilegalidad y arbitrariedad de la anulación de la subasta concernida. Su posición descansó en la ausencia de funda-mentos para la anulación y en la demostración de que a él se le debió conceder la buena pro. Tras analizar el contexto en que surgió la controversia, determinamos que la anula-ción de aquella subasta no respondió a un fin legítimo en protección del interés público, sino que representó un abuso de derecho y un acto arbitrario plagado de irregularidades. En vista de ello, resolvimos que —a pesar de que ya se había celebrado una nueva subasta— la con-troversia no se había tornado académica porque la actua-ción de la entidad gubernamental en cuestión podía tener consecuencias colaterales tales como una causa de acción en daños y perjuicios en la que el licitador perjudicado po-dría recobrar los costos incurridos para participar de la subasta arbitrariamente anulada.
En el caso de autos, el foro apelativo se amparó, preci-samente, en la norma de RBR Const., S.E. v. A.C., supra, para resolver que no procedía la desestimación de la de-manda incoada por Perfect Cleaning contra el Centro Cardiovascular. Concluyó que, dado que Perfect Cleaning *146 participó como licitadora en la subasta cuyo resultado fue posteriormente revocado, y puesto que no obtuvo la buena pro, ésta puede reclamar por los costos en que incurrió para participar en la subasta y otros gastos relacionados.
Por su parte, el Centro Cardiovascular aduce que el dic-tamen recurrido extiende desmesuradamente el alcance de la norma adoptada en RBR Const., S.E. v. A.C., supra, y avala una causa de acción inexistente en nuestra jurisdic-ción, a saber, aquella a favor de un licitador que no resultó favorecido en una subasta cuyo resultado es posterior-mente revocado por un error de derecho. Sostiene, además, que dicha postura no encuentra apoyo en la norma estable-cida en el precedente mencionado, ya que la situación tác-tica que dio lugar a ésta es totalmente distinguible de la que nos ocupa. Le asiste la razón.
En RBR Const., S.E. v. A.C., supra, la Junta de Subas-tas de la Autoridad de Carreteras y Transportación anuló una subasta sin exponer justificación alguna y se negó a adjudicarla a favor de RBR Const., S.E. levantando un fun-damento arbitrario e insuficiente. Posteriormente la Junta presentó como fundamento para anular la subasta el hecho de que no hubo una lectura en voz alta de los precios uni-tarios por partida de las tres licitaciones más bajas. Sin embargo, tras analizar el pliego de especificaciones y el reglamento correspondiente, nos percatamos de la inexis-tencia de dicho requisito, así como de la insuficiencia de las razones utilizadas para no adjudicar la subasta a favor de RBR Const., S.E.
Preocupados por las irregularidades mencionadas, des-tacamos la importancia de la secretividad en la etapa anterior a la apertura de la licitación para que el trámite de subasta sea de competencia efectiva y honesta, y expresa-mos que la anulación arbitraria de una subasta válida-mente celebrada derrota ese objetivo. Véase RBR Const., S.E. v. A.C., supra, pág. 849. Especificamos que una vez se abren las licitaciones, todos los postores conocen las cotiza- *147 dones de los demás, lo cual permite que los más poderosos económicamente tengan la oportunidad de reducir sus ofertas en la segunda subasta para eliminar a sus contendientes.
A la luz de lo anterior, en esa ocasión determinamos que la discreción que se le reconoce a las agencias para rechazar las licitaciones o anular una subasta está sujeta tanto a los objetivos del estatuto que las regula como al interés público. Resolvimos que “[s\ólo en relación a estos fines ... puede ejercerse la discreción administrativa delegada para anular una subasta válidamente adjudicada”, y expresamos que lo contrario sería permitir el abuso y la arbitrariedad. (Énfasis suplido.) RBR Const., S.E. v. A.C., supra, pág. 852.
En el caso que nos ocupa, sin embargo, no hubo una anulación abusiva o arbitraria de la subasta realizada por el Centro Cardiovascular. Más bien, lo que ocurrió fue una adjudicación errónea que ni siquiera presenta indicios de arbitrariedad o abuso de derecho. Dicho error en la adjudi-cación surgió porque, como cuestión de derecho, no corres-pondía otorgarle la buena pro a NBM Enterprises, ya que dicha entidad no había cumplido cabalmente con el pliego de especificaciones. Al resolver el asunto, el foro apelativo corrigió el error cometido por lo que, incluso, todavía existe la posibilidad de que Perfect Cleaning pueda resultar favo-recida en el resultado de una nueva subasta.
El análisis anterior demuestra que, en efecto, el foro apelativo hizo una interpretación equivocada de la opinión emitida en RBR Const., S.E. v. A.C., supra. Por un lado, obvió que la norma allí establecida surgió en el contexto de la anulación abusiva y arbitraria de una subasta válida-mente celebrada y no de una mera adjudicación errónea. Por otro lado, desatendió las razones que nos movieron a reconocer una posible causa de acción en aquel escenario, a saber: la necesidad de evitar la competencia desleal que *148 puede ocurrir al anularse una subasta después que se han abierto las licitaciones.
Más aún, consideramos que el dictamen recurrido sen-taría un peligroso precedente en cuanto apoya la disponi-bilidad automática de una causa de acción en daños y per-juicios a favor de todo licitador perdidoso en una subasta cuya adjudicación fuera posteriormente revocada. No pode-mos perder de vista que con cierta frecuencia los resulta-dos de las subastas son revisados y alterados tanto por el Tribunal de Apelaciones como por este Foro, sin que eso haya generado nunca una causa de acción a favor de los licitadores que inicialmente no fueron favorecidos.
Téngase presente, además, que cualquier determinación en este contexto debe ser cónsona con las normas que rigen las subastas gubernamentales. En particular, debemos re-cordar que las subastas son sólo invitaciones a presentar ofertas, por lo que la mera participación en dichos eventos no confiere derechos. Asimismo, no podemos desatender el principio de que los entes gubernamentales tienen discre-ción a la hora de adjudicar las subastas y que pueden, in-cluso, revocar la adjudicación de éstas antes de que se for-malice el contrato correspondiente. Claramente, tal como indicamos en RBR Const., S.E. v. A.C., supra, dicha facul-tad se mantiene siempre que se ejerza de forma razonable y para fines legítimos de la entidad o del interés público. En este caso, no existen razones para considerar que el Centro Cardiovascular ejerció su discreción de forma abu-siva o irrazonable, ni que la empleó en la consecución de objetivos ajenos al interés público.
Evidentemente, un resultado que conlleve la imposición de responsabilidad a una agencia por una mera adjudicación de subasta errónea, en ausencia de circunstancias extraordinarias como las que dieron lugar a la norma adoptada en RBR Const., S.E. v. A.C., supra, sería contrario al interés público, al mejor manejo de los fondos *149 del erario y a las pautas que regulan las subastas gubernamentales.
Aunque ante una moción de desestimación al amparo de la Regla 10.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III, corresponde tomar como ciertos los hechos bien alegados en la demanda e interpretarlos de forma favorable para el demandante, lo cierto es que cuando se demuestra que éste no tiene derecho a remedio alguno, procede conceder la desestimación solicitada. Colón v. Lotería, 167 D.P.R. 625 (2006).
En este caso, dado que Perfect Cleaning descansó úni-camente en la norma pautada en RBR Const., S.E. v. A.C., supra, y ya que dicha norma no aplica a los hechos de este caso, debemos concluir que dicha entidad no tiene derecho a remedio alguno aún interpretando sus alegaciones de la forma más favorable posible. Conforme a ello, resolvemos que Perfect Cleaning no tiene a su disposición una causa de acción en daños y perjuicios para reclamarle al Centro Cardiovascular los gastos y desembolsos realizados para parti-cipar de la subasta en la que no resultó favorecida. Por lo tanto, erró el Tribunal de Apelaciones al negarse a desesti-mar la demanda presentada.
III
Por los fundamentos que preceden, se expide el auto so-licitado, se revoca el dictamen del Tribunal de Apelaciones y se desestima la demanda presentada por Perfect Cleaning.

Se dictará sentencia de conformidad.

La Juez Asociada Señora Rodríguez Rodríguez se inhibió.

 Para la normativa equivalente con respecto a los municipios véase Colón Colón v. Mun. de Arecibo, 170 D.P.R. 718 (2007), y Cordero Vélez v. Mun. de Guánica, 170 D.P.R. 237 (2007).

 Para precisar lo que constituye un rompimiento injustificado de las negocia-ciones establecimos que se debe considerar lo siguiente: (1) el desarrollo de las ne-gociaciones, (2) cómo comenzaron, (3) el curso que siguieron, (4) la conducta de las *145 partes durante su transcurso, (5) la etapa en que se produjo el rompimiento y (6) las expectativas razonables de las partes en la conclusión del contrato, así como cual-quier otra circunstancia pertinente conforme a los hechos del caso. Prods. Tommy Muñiz v. COPAN, 113 D.P.R. 517, 530 (1982).

 Dicha norma fue discutida y reiterada recientemente en Colón v. Gla-mourous Nails, 167 D.P.R. 33 (2006).