# 2007 DTA 107

**TRIBUNAL DE APELACIONES
REGIÓN JUDICIAL DE CAGUAS, PANEL XI**

KÁRLAN GROUP CORP.
Peticionario-Recurrente

v.

MUNICIPIO DE GURABO
Recurrido

Núm. KLRA-07-00702

San Juan, Puerto Rico, a 6 de septiembre de 2007

Panel integrado por su Presidenta, la Juez Pesante Martínez,
el Juez Escribano Medina y la Juez Hernández Torres

Pesante Martínez, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Comparece ante nos, Karlan Group Corp. (el recurrente), quien mediante recurso de revisión administrativa nos solicita que examinemos la adjudicación que realizó la Junta de Subastas del Municipio de Gurabo (la Junta) en relación al proyecto de mejoras y ampliación a la Cancha Bajo Techo de Baloncesto del Barrio Celada ubicado en el referido municipio. La Junta adjudicó la buena pro a un licitador distinto al recurrente, y ello, a pesar de que el último fue el postor mas bajo.

Inconforme con la determinación de la Junta, el recurrente acudió ante nos, y señaló que la notificación de la adjudicación de la subasta fue inadecuada, por lo cual adujo que se le había violado su derecho a un debido proceso de ley. También indicó que la determinación de la Junta, de haber rechazado su licitación u oferta a pesar de haber sido el licitador más bajo, la hizo sirviéndose erróneamente de la interpretación del caso *Empresas Toledo v. Junta de Revisión y Apelación de Subastas de la Autoridad de Edificios Públicos,* res. el 31 de agosto de 2006 , **2006 JTS 147**. Además, indicó que la adjudicación de la subasta fue una arbitraria, ilegal y caprichosa, máxime cuando no se tomó en consideración que el recurrente fue el único licitador que participó en la subasta que manufactura sus propias estructuras en acero, y además, sin tomar en cuenta su vasta y extensa experiencia en la construcción de proyectos similares al subastado, su sólida capacidad económica y su facilidad para obtener la fianza de pago y ejecución (*payment and performance bond*).

Cumpliendo con nuestras órdenes, comparecieron ante nos San Lorenzo Construction Corp. (SLC) – el

licitador a quien le fue adjudicada la buena pro - y además, el Municipio de Gurabo en representación de la Junta. Con el beneficio de la comparecencia del recurrente y de los anteriores, resolvemos. Adelantamos que confirmamos la determinación de la Junta.

## I

Esbozamos a continuación una breve relación de los hechos e incidencias procesales de mayor relevancia a este caso.

El Municipio de Gurabo emitió el aviso de subasta para un proyecto de mejoras y ampliación a la cancha de baloncesto sita en el Barrio Celada. ■ En el aviso se señalaron fechas para la celebración de una reunión presubasta y para la subasta. Se expresó que era requisito asistir a la presubasta. Además, se destacó que la Junta de Subastas del Municipio de Gurabo (la Junta) se reservaba el derecho de aceptar o rechazar todas o cualquiera de las proposiciones recibidas y adjudicar la buena pro **no solamente mediante las condiciones de precio** y sí tomando en consideración aquellas ofertas que se ajustaran a los **mejores intereses** del Municipio de Gurabo.

La reunión de presubasta se celebró y acudieron al menos ocho representantes de diversas compañías constructoras, y entre ellos, el recurrente y SLC. Según surge de la Minuta o acta de la presubasta, [2] el presidente de la Junta permitió que el diseñador del proyecto dirigiera la reunión. Este último indicó a los prospectivos licitadores que sus propuestas tenían que prepararse utilizando los **formularios** que les proveyeron, los cuales debían estar debidamente **firmados y cumplimentados** en todas sus partes. Los licitadores debían leer y cumplir las instrucciones, y ello, como condición para que la Junta pudiera evaluar en sus méritos cada propuesta.

En la referida minuta se hizo constar que el diseñador explicó que con la cotización que sometieran, los prospectivos licitadores debían incluir un desglose por partidas debidamente cuantificadas, identificando el **costo unitario por partida** y costo total. Se les enfatizó en que toda la información debía estar debidamente firmada. Se añadió que los licitadores debían someter un *"Cost Breakdown"* y **se indicó expresamente que no se admitirían cantidades *"lump sum"*.**

De otra parte, se les notificó por escrito a los prospectivos licitadores que entre los requisitos que debían cumplir estaba el presentar una certificación del Departamento de Hacienda que acreditara la presentación de planillas contributivas por los últimos cinco (5) años. En fin, en la reunión presubasta se discutieron todos los requisitos y especificaciones de la obra, y además se proveyó la documentación que debían cumplimentar los licitadores para que sus propuestas pudieran ser evaluadas por la Junta. ■

La subasta se llevó a cabo el 8 de junio de 2007. Solamente comparecieron a licitar el recurrente y SLC. El primero ofreció realizar el proyecto por siete millones setecientos veintiún mil dólares ($7,721,000.00), mientras, SLC ofreció hacerlo por ocho millones ciento dieciocho mil dólares ($8,118,000.00). Luego de evaluar las propuestas, la Junta adjudicó la subasta a favor de SLC. La Junta hizo constar por escrito las razones que, a su juicio, justificaron la adjudicación. Primero, se indicó que el asesor del Municipio y diseñador del proyecto –Ing. Luis G. Suárez Martínez-, estimó que **la licitación u oferta del recurrente no estaba dentro de la realidad de los precios en el mercado.** Esto es, se apuntó que había una diferencia considerable entre el estimado de costos del proyecto que ofreció el recurrente y el estimado de costos del diseñador del proyecto - la diferencia era de $740,975.46. Segundo, se señaló que la propuesta presentada por el recurrente adolecía de varios defectos: (1) **no contenía un desglose de partidas en costo unitario** según se requirió en la reunión presubasta que se celebró, mas bien, el recurrente presentó las partidas con sumas a precio alzado o *lump sum*; (2) no contenía los documentos de *"Site Affidavit"* y *"Non Collusive Affidavit"* **en los correspondientes formularios** según fue requerido; y (3) dejó de incluir evidencia de radicación de las **planillas correspondientes al año 2006.** La Junta emitió notificación de la adjudicación el 13 de junio de 2007.

Del texto de la notificación de la adjudicación, surge que se le remitiría la misma al recurrente a una dirección cuyo apartado postal era "*P.O. Box 51510*". En el sobre en el que le fue enviada la notificación al recurrente surge que se le había sobrepuesto a manuscrito un número "*4*" en el referido apartado postal de modo que el mismo leía "*P.O. Box 51410*". La notificación enviada con acuse de recibo llegó a manos del recurrente el 3 de julio de 2007. Posteriormente, el 19 de julio de 2007, el recurrente presentó ante nos su escrito de revisión.

Tomando en cuenta lo anterior, llegamos a las siguientes conclusiones conforme al derecho aplicable.

## II

### A

En virtud del derecho a una efectiva revisión judicial, el debido proceso de ley exige que toda notificación de adjudicación de una subasta municipal sea "*adecuada*", aun cuando la Ley de Municipios Autónomos no precisa el contenido de dicha notificación. *Víctor Torres Products v. Junta de Subastas del Municipio de Aguadilla*, res. el 17 de enero de 2007, **2007 JTS 7**. Para poder hacer efectivo el derecho de revisión judicial que consagra el Artículo 15.002 de la Ley de Municipios Autónomos, en la notificación de adjudicación de una subasta municipal, es necesario que se advierta: el derecho a procurar revisión judicial; el término disponible para así hacerlo; y la fecha del archivo en autos de copia de la notificación de la adjudicación. *Id.*; *IM Winner, Inc. v. Junta de Subastas*, 151 D.P.R. 30, 38 (2000).

Se ha indicado que se requiere que la notificación de la adjudicación de una subasta se encuentre fundamentada. Así se evita que una parte se vea imposibilitada de cuestionar la correspondiente subasta debido a que, si desconoce las razones para la determinación de la junta, no tendrá fundamentos para cuestionar su proceder. *Id.* A esos fines, se ha establecido que la notificación de adjudicación de subasta, al menos, debe incluir: (1) los nombres de los licitadores que participaron en la subasta y una síntesis de sus propuestas; (2) los factores o criterios que se tomaron en cuenta para adjudicar la subasta; (3) los defectos, si alguno, que tuvieran las propuestas de los licitadores perdidosos; y (4) la disponibilidad y el plazo para solicitar la reconsideración y revisión judicial. *Id.*

En el caso ante nuestra consideración, la notificación de adjudicación que le envió la Junta al recurrente, incluye toda la información requerida según la jurisprudencia. No obstante, sí advertimos que en la misma se consignó una dirección que no era la correcta. Notamos lo anterior tras examinar los documentos que sometió el recurrente a la Junta, de los cuales surge en reiteradas ocasiones que su apartado postal era "*P.O. Box 51410*". Pero, en la notificación que recibió se consignó el apartado postal "*P.O. Box 51510*". Más aún, en el sobre en el que se envió la notificación se sobrepuso a mano el número "*4*" en el tercer dígito del referido apartado postal.

De todo lo anterior cabe inferirse razonablemente que, en principio, la notificación del resultado del proceso de subasta en controversia sería una defectuosa. Ello justifica el hecho de que el recurrente no adviniera en conocimiento de la determinación de la Junta con mayor antelación, y a su vez, que no estuviera en condiciones de presentar antes su escrito de revisión ante este Tribunal. Su dilación en la presentación de su recurso es imputable al error de la Junta.

Ahora bien, hay que destacar que los defectos de notificación no causaron perjuicio al recurrente. Esa situación no afectó su derecho a cuestionar la subasta ni impidió que este Foro entrara a revisar la razonabilidad de la determinación emitida por la Junta. Acogimos el recurso del recurrente por entender que lo presentó dentro del término en que efectivamente fue notificado de la determinación de la Junta. Más aún, expedimos una orden a su favor en atención a su solicitud en auxilio de jurisdicción para que paralizáramos la consumación del contrato de obra entre el Municipio de Gurabo y SLC, o en caso de que se hubiera suscrito, que se impidiera que comenzaran o continuaran las obras de construcción.

Por todo lo anterior, concluimos que aunque la notificación de la subasta que se le cursó al recurrente fue defectuosa, no incidió sobre su derecho a un debido proceso de ley. Muestra de ello es que con la presentación de su escrito logró que paralizáramos la contratación o construcción de las obras, y además, logró que entráramos a evaluar los meritos de su recurso. No se cometió el primer error señalado.

## B

En aras de proteger la buena administración del gobierno, los estatutos que requieren la celebración de subastas tienen el propósito de promover la competencia en las proposiciones, de manera que el Estado consiga realizar la obra **al precio más bajo posible**. Al requerirse que la subasta y el contrato se adjudiquen al postor más bajo se evita que haya favoritismo, corrupción, extravagancia y descuido al otorgarse los contratos. *Víctor Torres Products v. Junta de Subastas del Municipio de Aguadilla, supra; Justiniano v. E.L.A.*, 100 D.P.R. 334, 338(1971). **No existe, sin embargo, una regla inflexible que exija que la subasta deba adjudicarse siempre al postor más bajo, pues pueden existir consideraciones de interés público que lleven a que la licitación más baja no resulte ser la más económica.** *Víctor Torres Products v. Junta de Subastas del Municipio de Aguadilla*, supra; *Empresas Toledo v. Junta*, res. el 31 de agosto de 2006, **2006 JTS 147**. Establecer una regla inflexible de que el contrato deba adjudicarse al postor más bajo, prescindiendo de tales consideraciones, privaría al público del beneficio del criterio de los funcionarios públicos en aquellas cuestiones en que el estatuto requiere que ellos lo ejerciten. *Great American Indemnity Co. v. Gobierno de la Capital*, 59 D.P.R. 911, 916 (1942).

Por ello, se ha establecido que **las agencias gozan de discreción al evaluar las propuestas sometidas,** pues cuando se trata de la adquisición de servicios técnicos de gran costo y sofisticación, **la selección de un proveedor sobre otros puede conllevar decisiones que descansen, no en criterios estrictamente matemáticos,** sino en una valoración de la tecnología, y los recursos humanos con que cuenta ésta, a la luz de las necesidades presente y futuras de la agencia. *Víctor Torres Products v. Junta de Subastas del Municipio de Aguadilla, supra; Empresas Toledo v. Junta*, supra; *A.E.E. v. Maxon Engineering Services*, res. el 9 de diciembre de 2004, **2004 J.T.S. 199. Sólo si el licitador más bajo cumple con los requisitos reglamentarios de la agencia y tiene la capacidad de realizar la obra de forma eficiente, deberá éste ser considerado para realizar la obra.** *Id.*

Una vez la agencia o junta involucrada emite una determinación, los tribunales no deberán intervenir con ésta, salvo que se demuestre que la misma se tomó de forma arbitraria, caprichosa o mediando fraude o mala fe, **pues la agencia, con su vasta experiencia y especialización, se encuentra, de ordinario, en mejor posición que el foro judicial para determinar el mejor licitador,** tomando en consideración los factores esgrimidos tanto por la ley como por su reglamento de subastas. *Id.* **Así, pues, en ausencia de fraude, mala fe, o abuso de discreción, ningún postor tiene derecho a quejarse cuando otra proposición es elegida como la más ventajosa. La cuestión debe decidirse a la luz del interés público y ningún postor tiene un derecho adquirido en ninguna subasta.** *Víctor Torres Products v. Junta de Subastas del Municipio de Aguadilla, supra.* Además, **el peso de la prueba para demostrar la concurrencia de fraude o abuso de discreción recae en el demandante** [recurrente], y si éste no puede demostrar ausencia de factores racionales o razonables para la determinación de la agencia, deberá demostrar un perjuicio o una violación a los estatutos o reglamentos aplicables. *Empresas Toledo v. Junta, supra.*

En el caso particular de *Empresas Toledo v. Junta, supra*, se tomó en cuenta la teoría de la agencia a los efectos de que al planificar una obra de construcción, ésta preparaba un **estimado de costo** para evaluar la viabilidad de la obra y la disponibilidad de fondos. **Según explicó la agencia, el estimado era preparado por expertos, y el mismo se utilizaba para saber si el precio ofrecido por los licitadores en una subasta era viable, razonable y ajustado al mercado. Se destacó que la agencia apuntó que una propuesta irrazonablemente baja comparada con el estimado, podía ser indicativo de un error en la licitación, de partidas que no fueron cotizadas o de la cotización de materiales de inferior calidad.** Ello precisamente fue

lo que determinó la agencia en cuanto a Empresas Toledo, esto es, que el precio ofrecido por ella no respondía a la realidad del mercado y probablemente respondía a errores en la cotización o que utilizarían materiales de menor calidad. La agencia entendió que la cotización de Empresas Toledo era una irrazonable y muy inferior en comparación con el costo estimado de la obra hecho por los peritos de la agencia.

·Por su parte, el Tribunal Supremo entendió razonable que la agencia, sirviéndose de la información que le brindaron sus expertos o peritos, determinara que la oferta más baja en precio no respondía a lo que la obra debía costar. Advirtió que en aras de evitar que, de adjudicarse la subasta a Empresas Toledo, ésta se viera imposibilitada de ejecutar la obra por el precio ofrecido y de acuerdo a los términos y condiciones del contrato, y de tener que recurrir a órdenes de cambio u otros recursos, procedía que se le concediera el contrato a quien mejor se entendía que tenía mayor capacidad técnica para realizar obra según el precio ofrecido. Se concluyó que para realizar este tipo de evaluación, **el estimado de costo de los diseñadores resulta ser una variable apropiada para comparar.**

En el caso ante nuestra consideración, la Junta de Gobierno del Municipio de Gurabo seleccionó la propuesta de SLC a pesar de que el recurrente presentó un propuesta con un precio más bajo. Tomando en cuenta los principios discutidos, concluimos que su actuación resultó en un ejercicio responsable de adjudicación. La Junta se sirvió adecuadamente del análisis comparado del estimado de costos sometido por su asesor y diseñador del proyecto. Al advertir que el estimado ofrecido por el recurrente era considerablemente más bajo, tomó en cuenta este factor para no concederle la buena pro.

Como se advirtió a los licitadores desde la publicación del aviso de subasta, el precio ofrecido para llevar a cabo las labores no sería el único factor a considerar para adjudicar la subasta. Entendemos que en este caso, como en *Empresas Toledo v. Junta, supra*, la Junta pudo inferir razonablemente que la cotización tan baja que ofreció el recurrente - con una diferencia de más de $700,000.00 del estimado que realizó el diseñador-, podía resultar en una obra que no estuviera bien realizada, o que en lugar de ganancias y beneficios generara pérdidas y problemas con el cambio de órdenes. En ese caso, la oferta del postor más bajo -el recurrente-, podía convertirse en la más costosa eventualmente. No nos cabe duda de que la Junta, en el ejercicio de la facultad discrecional que le reconoce la ley y la jurisprudencia, decidió responsablemente dar mayor peso a consideraciones de interés público que al hecho de que se le hubiera presentado una oferta que era cerca un millón de dólares más bajo del costo estimado por el diseñador de la obra y asesor del municipio.

Ante las circunstancias de este caso, le concedemos entera deferencia a la determinación que tomó la Junta, tras adoptar las recomendaciones de sus peritos, las cuales, remiten a un proyecto cuyo costo estimado es uno multimillonario. Llegamos a esta determinación, máxime cuando el recurrente ha fallado en aportar prueba que acredite que el referido ente administrativo rechazó su oferta mediante fraude, arbitrariedad o irrazonabilidad. Tampoco demostró que hubiera mediado favoritismo hacia SLC. De hecho, cabe destacar que SLC, como licitador restante, también presentó una oferta menor a la estimada por los peritos del Municipio de Gurabo. No obstante, su propuesta y estimado de costos se acercó más a la de los peritos del Municipio de Gurabo. Ello sin contar con el hecho de que SLC dio fiel cumplimiento a las especificaciones, términos y condiciones que se le impusieron desde el momento en que se celebró la presubasta. Lo anterior, tanto en la cumplimentación de los documentos requeridos como en el detalle y minuciosidad con la que atendió los requerimientos que se le impusieron. Ello, distinto a como lo hizo el recurrente.

En relación a lo anterior, advertimos que las otras razones que motivaron a la Junta a no adjudicar a favor del recurrente la subasta se debió a su incumplimiento con la presentación de información requerida y en fallar en presentarla en la forma en que se especificó. En síntesis, el recurrente no cumplió con el requisito de presentar la información en los formularios que se le proveyeron. Así sucedió con ciertos affidavits que debía presentar. Las instrucciones a estos efectos fueron claras y categóricas desde el inicio del proceso. Tampoco acreditó información relacionada a sus planillas contributivas correspondientes al año 2006, ni procuró ofrecer

las razones que justificaban su omisión antes de someter su propuesta o junto con su propuesta.

Súmese a lo anterior el hecho de que el recurrente contravino la prohibición expresa relacionada a la presentación de un desglose de partidas en sumas alzadas o *lump sum*. Esto, a pesar de que en varios de los documentos que se le ofrecieron para presentar su propuesta, y además, en la reunión de presubasta, se le instruyó y enfatizó sobre el cumplimiento de esa especificación. El hecho de que posterior a la adjudicación de la subasta, el recurrente pretendiera subsanar sus errores, primero, aduciendo la razones que a su juicio justificaron el incumplimiento con los requisitos, condiciones y especificaciones de la subasta, o segundo, explicando porqué el precio que ofreció era tan bajo, no es óbice para que se deje sin efectos la adjudicación de la Junta.

En este caso, la Junta instruyó a los prospectivos licitadores de todos los requisitos y especificaciones que debían ser satisfechos como condición para que sus propuestas pudieran ser consideradas. Una vez sometida la propuesta de cada licitador, la Junta evaluó las mismas conforme a la información que se le requirió y que se presentó. Las omisiones del recurrente no pueden serle imputadas como error a la Junta. No se cometió el segundo error señalado.

## III

En mérito de lo expuesto, confirmamos el dictamen recurrido.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. María E. Pérez Ortiz
Secretaria del Tribunal de Apelaciones