ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| UNIQUE SECURITY CORPORATION<br><br>Recurrente<br><br>V.<br><br>MUNICIPIO DE TOA ALTA, JUNTA DE SUBASTAS DEL MUNICIPIO DE TOA ALTA<br><br>Recurrido | KLRA202400357 | *RECURSO DE REVISIÓN ADMINISTRATIVA* de Subasta de Junta de Subastas del Municipio de Toa Alta<br><br>Caso Núm. 25-023, Serie 2024-2025<br><br>Sobre:<br><br>Impugnación de Cancelación de Subasta por arbitrariedad |

Panel integrado por su presidente el Juez Rodríguez Casillas, el Juez Salgado Schwarz y el Juez Ronda Del Toro

**Ronda Del Toro, Juez Ponente**

# SENTENCIA

En San Juan, Puerto Rico, a 29 de agosto de 2024.

Unique Security Corp. (Unique Security o Recurrente), solicita la revocación de la *Notificación de Cancelación de Adjudicación Subasta 25-023 "Servicio de Seguridad y Vigilancia"* que emitió y notificó la Junta de Subastas del Municipio de Toa Alta (Junta o Recurrido) el 28 de junio de 2024.  Mediante esta, la Junta canceló la adjudicación del 21 de mayo de 2024. Fundamentó su decisión en que Unique Security no estaba al día con el plan de pago aprobado por el Departamento de Hacienda (Hacienda) y sometido con su oferta en el proceso de licitación.[1]

Por las razones que exponemos a continuación, *Revocamos* la determinación recurrida.

---
[1] Apéndice del recurso de revisión, págs. 22-25.

**I.**

La Subasta Núm. 25-023 del Municipio Autónomo de Toa Alta consistía en el servicio de servicio de seguridad y vigilancia.[2] Se publicó el **1 de abril de 2024**.[3]

Según el referido Aviso de Subasta, los posibles licitadores tenían hasta las 4:00 p.m. del 22 de abril de 2024, para entregar sus ofertas/propuestas con todos los documentos complementarios requeridos en las Condiciones e Instrucciones Generales de la Subasta General.

En la página 8 del documento de Condiciones e Instrucciones Generales se le requería a los licitadores suplir ciertos documentos, entre ellos, **una certificación del Departamento de Hacienda sobre Ausencia de Deuda Contributiva (o existencia de plan de pagos**).[4]

Surge del expediente que Unique Security sometió un documento con fecha de 1 de abril de 2024 sobre Certificación de Deuda, más un documento de **3 de abril de 2024** sobre *Aprobación de Plan de Pago con Hacienda*, asignado al número **661965,** por la cantidad de $258,372.97.[5]

El **21 de mayo de 2024**, la Junta determinó adjudicar la *Buena Pro* a Unique Security. Concluyó que la adjudicación representa el mejor interés público ya que es la de mayor costo-eficiencia para el Municipio de Toa Alta. La Junta notificó su decisión al día siguiente.[6]

Como parte del proceso para formalizar el contrato, el 25 de junio de 2024 a las 2:28 pm la Sra. Leslie A. Marrero Nieves, Directora de la Oficina de Secretaría del Municipio de Toa Alta les

---

[2] *Íd.*, págs. 1-2.
[3] *Íd.*, págs. 8-13.
[4] Apéndice de la Oposición de Recurso de Revisión, pág. 9.
[5] Apéndice del Recurso de Revisión, págs. 3-7 y Apéndice Oposición al Recurso, págs. 13-19.
[6] *Íd.*, págs. 8-13.

solicitó a los funcionarios de Unique que le suplieran una certificación de Deuda del Departamento de Hacienda y el plan de pago al día. Le informó que, de no someter los documentos, no podrá firmar el contrato.[7] Ese mismo 25 de junio de 2024 a las 3:19 la asistente de Unique le cursa un correo electrónico a la señora Marrero.[8] En respuesta, a las 3:30 pm, la señora Marrero le envió otra comunicación a Unique en la que le informó que, "la certificación de deuda que adjunta está vencida. Necesitamos el plan de pago actual vigente y al día".[9] A las 4:07 pm, la señora Marreo le escribió a Unique que tan pronto le sea posible les hiciera llegar el plan de pago.[10] El 26 de junio de 2024 a las 8:34 am, Jessica Caballero Caraballo de la Oficina de Secretaría Municipal del Municipio de Toa Alta escribe que recibió los documentos y que necesitaba evidencia de plan de pago de la deuda con Hacienda. A eso, a las 8:38 am de ese mismo 26 de junio, Unique responde que, "les había enviado en email anterior. Es el único plan de pagos que tenemos."[11]

Surge del expediente que el recurrente Unique sometió una *Certificación de Deuda de Hacienda* de **26 de junio de 2024** la cual refleja un balance adeudado de $205,960.78. Asimismo, consta en el expediente, un documento de *Aprobación de Plan de Pagos* con fecha de **27 de junio de 2024.** Este indica que la solicitud de plan de pagos fue aprobada y, que el acuerdo, por la cantidad de $254,756.70, se le asignó el número **707780**.[12]

Así las cosas, el **28 de junio de 2024**, la Junta notificó la cancelación de la adjudicación de la subasta al concluir que el

---

[7] Apéndice de la Oposición al recurso de revisión, pág. 20.
[8] Id, pág. 21.
[9] Id, pág. 21.
[10] Id, pág. 22.
[11] Id, pág.23.
[12] Apéndice del recurso de revisión, págs. 14-18; ver, además, apéndice de la Oposición al Recurso de Revisión, págs. 24-28.

Recurrente no estaba al día con el plan de pago aprobado por Hacienda.[13] La Junta expresó lo siguiente:

> La Junta erró al adjudicar la subasta a la compañía al licitador Unique Security PR Inc. El licitador presentó junto con su oferta la Certificación de Deuda del Departamento de Hacienda con fecha 3 de abril de 2024. La misma reflejaba una deuda de $258,372.97 y un plan de pago número 661965, efectivo el 15 de mayo de 2024. Al solicitarle al licitador los documentos vigentes para la formalización del contrato, nos percatamos que el licitador sometió una nueva certificación de deuda con fecha del 26 de junio de 2024, la cual reflejaba una deuda de $254,756.70 y un nuevo plan de pago bajo el número 707780, con fecha 27 de junio de 2024, comenzando el 15 de julio de 2024. Luego del análisis de ambas certificaciones de deuda y los planes de pago, se entiende que el licitador no estaba al día con el plan de pago que le fuera aprobado por el Departamento de Hacienda y que fuera sometido con su oferta en el proceso de licitación.
>
> Las certificaciones de deuda de las agencias gubernamentales son parte de la documentación que el licitador somete en el proceso de licitación como evidencia de que es un proveedor responsable, con buen historial de capacidad y cumplimiento, esto incluye mantener un buen historial de pago y tener al día los planes de pagos otorgados por el Gobierno del Estado Libre Asociado de Puerto Rico para que su oferta sea considerada por la Junta de Subastas.[14]

En desacuerdo con la determinación de la Junta, el **8 de julio de 2024**, Unique Security presentó el recurso que atendemos. Alegó que incidió la Junta:

> AL CANCELAR LA ADJUDICACIÓN DE LA SUBASTA 25-023 A UNIQUE SECURITY DE MANERA ARBITRARIA, IRRAZONABLE INCORRECTA, CONTRARIA A DERECHO Y POR RAZÓN INJUSTIFICADA, AMPARÁNDOSE EN QUE LA PETICIONARIA SUPUESTAMENTE NO CUMPLIÓ CON EL PLAN DE PAGO ACORDADO CON EL DEPARTAMENTO DE HACIENDA LO QUE NO ES CORRECTO.

El Recurrido presentó su Oposición al Recurso de Revisión Administrativa. Con el beneficio de ambas comparecencias, adjudicamos el recurso.

---

[13] Íd., págs. 22-25.
[14] Íd. págs. 23-24.

**II.**

**A.**

El procedimiento comúnmente utilizado por el Gobierno para adquirir bienes y servicios es la subasta pública formal u ofertas selladas. Caribbean Communications v. Pol. De P.R., 176 DPR 978 (2009); R&B Power v. E.L.A., 170 DPR 606, 620 (2007). La subasta formal comienza con la preparación del pliego de condiciones y especificaciones, seguido por la emisión de la invitación o aviso de subasta al público. Luego, los interesados someten sus propuestas selladas las cuales se hacen públicas con la celebración del acto de apertura en presencia de todos los postores. Caribbean Communications v. Pol. De P.R., *supra*, págs. 994-995. Después, las ofertas pasan a manos de un comité evaluador que, luego de evaluarlas, emite su recomendación para la adjudicación de la buena pro. Finalmente, el procedimiento concluye con la adjudicación de la buena pro y la notificación de esta a todos los postores. Íd.

La particularidad del procedimiento de subasta formal reside en que las ofertas se presentan selladas. Esto es de suma importancia, pues garantiza la secretividad en la etapa anterior a la apertura de la licitación. Este elemento es indispensable para que exista una competencia leal y honesta, pues impide que un postor enmiende su propuesta para superar la de un competidor. Caribbean Communications v. Pol. De P.R., *supra;* Trans Ad de PR v. Junta de Subastas, 174 DPR 56, 66 (2008).

Dado que la adjudicación de las subastas gubernamentales conlleva el desembolso de fondos del erario, están revestidas de un gran interés público y deben regirse por preceptos legales que promuevan la sana administración pública*.* Caribbean Communications v. Pol. de P.R., *supra*, pág. 994. Esto es así, pues

las adjudicaciones de las subastas gubernamentales suponen el desembolso de fondos del erario, valor jurídico de la mayor importancia. En consonancia, la consideración primordial al momento de determinar quién debe resultar favorecido en el proceso de adjudicación de subastas debe ser el interés público en proteger los fondos del pueblo de Puerto Rico. Transporte Rodríguez v. Jta. Subastas, 194 DPR 711, 719 (2016); Cordero Vélez v. Municipio de Guánica, 170 DPR 237, 245 (2007), Caribbean Communications v. Pol. de PR., *supra*.

En el trámite de la subasta, se debe perseguir la competencia libre y transparente entre el mayor número de licitadores posible, procurando conseguir los precios más económicos, evitar el favoritismo, la corrupción, el dispendio, la prevaricación, la extravagancia y el descuido al otorgarse los contratos; y minimizar los riesgos de incumplimiento. Empresas Toledo v. Junta de Subastas, 168 DPR 771, 778 (2006); Caribbean Communications v. Pol. de PR*, supra*, pág. 994*.

De manera que, en aras de proteger la buena administración del gobierno, los estatutos que requieren la celebración de subastas tienen el propósito de promover la competencia en las proposiciones, de manera que el Estado consiga realizar la obra al precio más bajo posible. Torres Prods. v. Junta Mun. Aguadilla, 169 DPR 886, 897 (2007). Al requerirse que la subasta y el contrato se adjudiquen al postor más bajo se evita que haya favoritismo, corrupción, extravagancia y descuido al otorgarse los contratos. Torres Prods. v. Junta Mun. Aguadilla, *supra*; Justiniano v. E.L.A., 100 DPR 334, 338 (1971).

Aunque se favorece la selección del licitador que ofrezca el menor costo, no hay una norma legislativa que obligue a las agencias a escoger al licitador más bajo. Ello, cuando entre otros

la agencia entienda que sus intereses no estarán adecuadamente protegidos. Véase, Empresas Toledo v. Junta de Subastas, *supra*, pág. 782. Al momento de evaluar a los licitadores, la agencia debe procurar seleccionar al que esté mejor capacitado para proveer el bien o servicio en cuestión. Íd.

Por ello, un organismo gubernamental está facultado para rechazar la licitación más baja en todas aquellas ocasiones en que estime que los servicios técnicos, probabilidad de realizar la obra de forma satisfactoria y dentro del tiempo acordado, materiales, etc., que ofrezca un postor más alto corresponde a sus mejores intereses. Empresas Toledo v. Junta de Subastas, *supra*, pág. 783. Claro está, la agencia tiene discreción de rechazar la oferta más baja por una más alta, siempre y cuando esta determinación no esté viciada por fraude o sea claramente irrazonable. Id.

**B.**

En el caso de los municipios, tanto las subastas tradicionales como el requerimiento de propuestas que adjudique una Junta de Subastas municipal están reguladas por la Ley Núm. 107-2020, conocida como el Código Municipal de Puerto Rico (Ley Núm. 107-2020)[15] y el "Reglamento para la Administración Municipal de 2016" (Reglamento Núm. 8873). PR Eco Park et al. v. Mun. de Yauco, 202 DPR 525, 533-534 (2019).

En lo pertinente, el Artículo 2.040 del Código Municipal discute las funciones y deberes de la Junta. 21 LPRA sec. 7216. En cuanto a los criterios de adjudicación, el inciso (a) dispone en lo pertinente que, "[l]a Junta hará las adjudicaciones tomando en consideración que las propuestas sean conforme a las

---

[15] Anteriormente, Ley Núm. 81-1991, según enmendada, conocida como la *Ley de Municipios Autónomos de Puerto Rico*, 21 LPRA sec. 4001 *et seq.,* derogada por la Ley Núm. 107-2020, conocida como el Código Municipal de Puerto Rico.

especificaciones, los términos de entrega, la habilidad del postor para realizar y cumplir con el contrato, la responsabilidad económica del licitador, su reputación e integridad comercial, la calidad del equipo, producto o servicio y cualesquiera otras condiciones que se hayan incluido en el pliego de subasta."

A su vez, el inciso (b) indica que:

b. Causas para rechazar pliegos de subastas — La Junta de Subasta podrá rechazar la licitación o las licitaciones que se reciban como resultado de una convocatoria, cuando considere que el licitador carece de responsabilidad **o tiene una deuda con el municipio o el Gobierno de Puerto Rico** o Gobierno federal o que la naturaleza o calidad de los suministros, materiales o equipo no se ajustan a los requisitos indicados en el pliego de la subasta, o que los precios cotizados se consideren como irrazonables o cuando el interés público se beneficie con ello.

A su vez, el Capítulo VIII, Parte I, Sección 4, inciso ( 14) del "Reglamento para la Administración Municipal de 2016", Reglamento Núm. 8873, requiere que en las adquisiciones y subastas en general todo licitador debe incluir, entre otros documentos, la Certificación Negativa o de Deuda del Departamento de Hacienda, Negociado de Recaudaciones.[16]

De forma similar el Artículo VIII, Sección 2, Inciso F (6) del Reglamento para Establecer las Normas y Procedimientos y Administración de las Subastas Públicas y las Solicitudes de Propuestas en el Municipio de Toa Alta, Reglamento aprobado el 19 de abril de 2013, dispone que:

F- Además, el licitador que sea una persona jurídica deberá acompañar los siguientes documentos:

6. Certificación de no deuda por concepto de contribución sobre ingresos.

En cuanto a la Cancelación de la Adjudicación de Subasta, el Reglamento Núm. 8873 dispone en la Sección 14, Parte II, Capítulo VIII como sigue:

---

[16] Página 96 del Reglamento.

La Junta podrá cancelar la adjudicación antes de la formalización del contrato o de emitida la orden de compra. Sin que se entienda como una limitación, se podrá cancelar la adjudicación bajo las siguientes circunstancias:

1. Si el municipio ya no tiene la necesidad que originó la subasta.

2. Cuando por alguna causa inesperada e imprevisible, se agoten los fondos asignados para la transacción o deban utilizarse para otro propósito.

3. Por otras razones que beneficien el interés público.

   Esta determinación será notificada por escrito y por correo certificado con acuse de recibo a las partes involucradas y las fianzas prestadas serán devueltas.

De forma similar lo establece el Reglamento para Establecer las Normas y Procedimientos y Administración de las Subastas Públicas y las Solicitudes de Propuestas en el Municipio de Toa Alta en el Artículo IX, Sección 12.

## C.

Es norma reiterada que los tribunales apelativos debemos conceder deferencia a las determinaciones de las agencias administrativas, por razón de la experiencia y el conocimiento especializado que éstas poseen sobre los asuntos que se les han delegado. Hernández Feliciano v. Municipio de Quebradillas, 211 DPR 99 (2023); Rolón Martínez v. Supte. Policía, 201 DPR 26, 35 (2018); Torres Rivera v. Policía de PR, 196 DPR 606, 626 (2016). Estos dictámenes cuentan con una presunción de legalidad y corrección que subsiste mientras no se produzca suficiente prueba para derrotarla. OEG v. Martínez Giraud, 210 DPR 79, 89 (2022); Capó Cruz v. Junta de Planificación et al., 204 DPR 581 (2020); Torres Rivera v. Policía de PR, *supra*, pág. 626; Batista, Nobbe v. Jta. Directores, 185 DPR 206, 215 (2012).

Para así lograrlo, corresponde a la parte que las cuestiona "demostrar que existe otra prueba en el expediente que reduzca

o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba presentada que tuvo ante su consideración." Graciani Rodríguez v. Garage Isla Verde, 202 DPR 117, 128 (2019); Camacho Torres v. AAFET, 168 DPR 66, 91 (2006).

Por tanto, la parte que impugna judicialmente las determinaciones de hechos de una agencia administrativa tiene el peso de la prueba para demostrar que estas no están basadas en el expediente o que las conclusiones a las que llegó la agencia son irrazonables. OEG v. Martínez Giraud, *supra*; OCS v. Universal, 187 DPR 164, 178-179 (2012); González Segarra v. CFSE, 188 DPR 252, 276-278 (2013).

En el contexto de las subastas gubernamentales, es menester tener presente que las agencias administrativas, de ordinario, se encuentran en mejor posición que los tribunales para evaluar las propuestas o licitaciones ante su consideración de acuerdo con los parámetros establecidos por la ley y los reglamentos aplicables. Aut. Carreteras v. CD Builder, Inc., 177 DPR 398, 408 (2009). Ello responde a que la agencia posee una vasta experiencia y especialización que la colocan en mejor posición que el foro judicial para seleccionar el postor que más convenga al interés público. Caribbean Communications v. Pol. de P.R.*, supra*, pág. 1006; Perfect Cleaning v. Centro Cardiovascular, 172 DPR 139 (2007).

De manera que, la norma es que las agencias gozan de una amplia discreción en la evaluación de las propuestas sometidas ante su consideración. Caribbean Communications v. Pol. de P.R.*, supra*; Accumail P.R. v. Junta Sub. A.A.A., 170 DPR 821, 828-829 (2007). Se reconoce pues discreción a las agencias

administrativas en el ejercicio de su facultad de considerar licitaciones, rechazar propuestas y adjudicar la subasta a favor de la licitación que estime se ajusta mejor a las necesidades particulares de la agencia y al interés público en general. Aut. Carreteras v. CD Builder, Inc., *supra*.

Una vez la agencia o junta involucrada emite una determinación, los tribunales no deben sustituir el criterio de la agencia o junta concernida, excepto si se demuestra que la decisión se tomó de forma arbitraria o caprichosa, o mediando fraude o mala fe. Caribbean Communications v. Pol. de P.R.*, supra*; Torres Prods. v. Junta Mun. Aguadilla, *supra*. En ausencia de estos elementos, "ningún postor tiene derecho a quejarse cuando otra proposición es elegida como la más ventajosa. La cuestión debe decidirse a la luz del interés público [...]". Id., citando a Great American Indemnity v. Gobierno de la Capital, 59 DPR 911, 916 (1942). En tales casos, la determinación será sostenida si cumple con el criterio de razonabilidad. Caribbean Comunications v. Pol. de P.R., *supra*.

A la luz de la mencionada normativa, evaluamos.

### III.

El Recurrente señala que la Junta incidió al cancelar la adjudicación de la Subasta 25-023 a Unique Security.  Alega que no es correcto decir que no cumplió con el plan de pago acordado con Hacienda.  Mencionó que, para evitar cualquier confusión sobre el asunto, al momento de entregar los documentos para la contratación, solicitó una reunión con la Junta de Subasta para explicarle la incongruencia en la identificación del plan de pago notificado durante el proceso de licitación.  Sostuvo que la Junta hizo caso omiso a su solicitud y concluyó, al cancelar la subasta, que el cambio en la numeración del plan de pago obedeció a que

el peticionario incumplió el plan de pago.  Agregó que esa decisión no es correcta ni se sustenta con los documentos del expediente.

La Junta de Subasta, por su parte, alegó que la corporación recurrente debió ser descalificada como licitador porque no presentó, antes de la fecha del cierre de las licitaciones, la Certificación de Deuda expedida manualmente por el Departamento de Hacienda con la firma en original del funcionario del Departamento de Hacienda.  Ello, para evidenciar que el plan de pagos aprobado se encuentra en cumplimiento.  Sostuvo que la cancelación de adjudicación corrigió adecuadamente el error inicial, asegurando que un licitador incumplidor con las Condiciones e Instrucciones Generales de la subasta general fuera descalificado como lo exige la ley y la Reglamentación.  Añadió que, aunque la Junta le adjudicó la subasta erróneamente al recurrente, luego actuó correctamente al cancelar la adjudicación. Adujo que, en el proceso de formalizar el contrato, se percataron que los documentos que sometió Unique Security con su oferta, no constituían la certificación de deuda correcta que se emite manualmente con la firma de un funcionario de Hacienda. Reconoció que el recurrente, luego de cancelada la subasta, presentó una Certificación de Deuda de fecha 2 de julio de 2024, de forma manual y firmada por el funcionario autorizado de Hacienda.  Evaluamos.

El 1ro de abril de 2024, el Municipio de Toa Alta publicó la Subasta Núm. 25-023 para el servicio de seguridad y vigilancia. La página 8 del documento de Condiciones e Instrucciones Generales de la Subasta General le requería a los licitadores a **suplir una certificación del Departamento de Hacienda sobre Ausencia de Deuda Contributiva (o existencia de plan**

**de pagos)**.[17]  Del aviso de subasta no surge que la certificación del Departamento de Hacienda tenía que constar en un formato en específico de forma manual o contener ciertas firmas en particular.

Así las cosas, Unique Security sometió una Certificación de Deuda del Departamento de Hacienda con fecha de 1 de abril de 2024 con vigencia de 30 días después de emitido.  Al tener deuda con el Departamento de Hacienda, Unique incluyó un plan de pagos según documento emitido el 3 de abril de 2024 sobre *Aprobación de Plan de Pago con Hacienda.*  De este surge que la solicitud para un acuerdo de pago con el Departamento de Hacienda por la cantidad de $258,372.97 fue aprobado y asignado al número 661965.  El plan de pago incluía una tabla con el periodo adeudado por mes y año, más el balance.

Luego de que la Junta le adjudicó la *Buena Pro* a Unique Security, la Oficina de Secretaría del Municipio de Toa Alta le requirió a Unique que le supliera una certificación de Deuda del Departamento de Hacienda y el plan de pago al día, de lo contrario no se podría firmar el contrato.  En ningún lugar se le especificó a Unique que la certificación debía ser emitida de forma manual.

En respuesta, Unique sometió otra *Certificación de Deuda de Hacienda* de **26 de junio de 2024** la cual reflejaba un balance adeudado de $205,960.78.  Ese documento contenía la firma del Secretario Auxiliar de Rentas Internas o su representante autorizado.  Asimismo, incluyó otro documento de *Aprobación de Plan de Pagos* con fecha de 27 de junio de 2024.  Este documento indica que la solicitud de plan de pagos fue aprobada y, que el acuerdo, por la cantidad de $254,756.70, se le asignó el número 707780. También contiene una tabla con el periodo adeudado por

---

[17] Apéndice de la Oposición de Recurso de Revisión, pág. 9.

mes y año, más el balance.[18]  En los documentos de certificación de deuda y plan de pagos, emitidos en abril y en junio de 2024, el Departamento de Hacienda hizo referencia al mismo "ID de contribuyente.

A pesar de que Unique le sometió a la Junta de Subastas los documentos que evidenciaban el plan de pagos, el 28 de junio de 2024, al evaluar ambas certificaciones de deuda y los planes de pago, la Junta canceló la subasta al concluir que el Recurrente no estaba al día con el plan de pago aprobado por el Departamento de Hacienda.

En este proceder la Junta erró pues de ninguno de estos documentos surge que Unique no estuviese cumpliendo con el Plan de Pagos aprobado con el Departamento de Hacienda.  Más aun, cuando de las especificaciones de la Subasta solo se requería que los licitadores suplieran la certificación del Departamento de Hacienda sobre ausencia de deuda o existencia de plan de pagos. No surge del expediente ante nos, que la Junta de Subasta requiriera algún formato en particular para las certificaciones del Departamento de Hacienda, como ahora lo pretende la Junta de Subastas en su Oposición al Recurso de Revisión.   De ser así, las instrucciones en los documentos requeridos a los licitadores debieron ser claras y precisas en cuanto a esa formalidad.

Ahora bien, aun cuando las certificaciones de plan de pago contenían dos números distintos, de estas surge que el ID del contribuyente es el mismo en ambas.  Además, podemos corroborar de las tablas unidas a los planes de pagos de abril y junio, que la información es esencialmente la misma, pero con las fechas y números actualizados.   Por lo que, el expediente

---

[18] Apéndice del recurso de revisión, págs. 14-18; ver, además, apéndice de la Oposición al Recurso de Revisión, págs. 24-28.

administrativo contiene la documentación adecuada y necesaria para validar la adjudicación de la subasta a Unique y proceder con la firma del contrato.

Así que, luego de revisar los documentos unidos al expediente y los argumentos de las partes, concluimos que la Junta de Subasta del Municipio de Toa Baja actuó de forma irrazonable y arbitraria al cancelar la subasta.

Por último, no podemos pasar por alto que la Junta de Subasta, en el escrito de Oposición al Recurso, aludió a que la única certificación manual y firmada por un funcionario autorizado de Hacienda fue la que presentó el recurrente, por primera vez, el 2 de julio de 2024, luego de la cancelación de la subasta.

Sobre este punto, en efecto verificamos que, como parte del apéndice del recurso, el recurrente incluyó una Certificación de Deuda que emitió el Departamento de Hacienda el **2 de julio de 2024**. Mediante esta, el Negociado de Recaudaciones, Distrito de Cobro de Hacienda indicó que Unique Security tenía el plan de pago número 707780, el cual estaba al día. Agregó que, "La planilla de IVU del período de febrero de 2024 fue radicada a tiempo el sistema no reconoció y canceló el plan de pago #661965 el cual no se puede activar y se realiza uno nuevo. El mismo se cumplió con los pagos."[19]

Este documento, al que aludieron ambas partes en sus escritos, aunque fue emitido con posterioridad a la fecha de cancelación de la subasta, nos confirma la determinación a la que aquí hemos llegado es la adecuada. Ello porque afirma que Unique tenía un plan de pagos y estaba al día. Además, aclara cualquier duda en cuanto a la diferencia en los números del plan de pagos de abril y de junio, quedando así subsanada la información

---

[19] Íd., pág. 19.

requerida. Procede revocar la Notificación de Cancelación de Adjudicación de la Subasta emitida por la Junta de Subastas del Municipio de Toa Alta y devolver el caso a dicha Junta, para que, una vez aceptadas las Certificaciones de Deuda que el licitador y aquí recurrente entregó a la Junta de Subastas del Municipio de Toa Alta, como buenas y válidas, se evalúe nuevamente las licitaciones y se adjudique por la Junta de Subastas del Municipio de Subastas, la Subasta objeto de este Recurso.

## IV.

Por los fundamentos ante expuestos, *Revocamos* la Notificación de Cancelación de Adjudicación de la Subasta emitida por la Junta de Subastas del Municipio de Toa Alta y devolvemos el asunto a la referida Junta para la evaluación de la Certificación emitida por el Departamento de Hacienda y la firma del contrato.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones